# Brewer *v.* Watson.

*Special Action for Damages, by Attorney against State Auditor.*

1. *Auditor's duties; when ministerial.*—The State auditor is denominated in the constitution an executive officer, but many of his duties are ministerial, and others are *quasi*-judicial; and his custody of the "Tax-Ledger," as this court has decided (*Brewer v. Watson*, 61 Ala. 310), involves a ministerial duty.

2. *When action lies against auditor, by attorney; what damages are recoverable.* An action lies against the State auditor, in favor of an attorney, on account of his refusal to allow the latter to inspect the "Tax-Ledger" showing the entries relating to the accounts of a tax-collector, by whom the attorney was employed; and nominal or compensatory damages may be recovered, without proof of malice, or an intent to injure, on the part of the defendant; but, if the complaint alleges that the refusal was "malicious, and with intent to injure the plaintiff," proof of such malice or intent is necessary to authorize a recovery of vindictive damages.

3. *Same.*—To sustain such an action, it is not necessary that the auditor should have *known*, at the time of his refusal, the attorney's agency or employment by the tax-collector: it is sufficient if he had reasonable grounds to be advised of it.

4. *Same; relevancy of evidence as to tax-collector' claim.*—In such action, it appearing that the plaintiff was employed by a tax-collector to procure the allowance of a claim by the auditor for an alleged excess or over-payment of taxes, as shown by the books in the auditor's office, his compensation depending on the allowance and amount of the claim; evidence in relation to the state of the accounts between the tax-collector and the State, is too remote from the issue, and is irrelevant.

5. *Demurrer; specification of causes.*—"That the complaint does not contain or set forth any facts which show that the plaintiff has a right to recover the damages claimed by him in this suit," is not a sufficient specification of any cause of demurrer, as required by the statute.—Code, § 3005.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JAMES Q. SMITH.

VOL. LXV.

[Brewer v. Watson.]

This action was brought by Charles J. Watson against Willis Brewer, and was commenced on the 3d of April, 1879. The complaint was substantially as follows:

1. Whereas, in September, 1878, the defendant being then the State auditor, and having in his custody and possession the books and papers belonging to said office, which it "was his duty to keep open for the inspection and information of all the citizens of the State having an interest in them;" and plaintiff being an attorney-at-law, regularly licensed, and being employed as an attorney by J. F. Boyles, who was the tax-collector of Monroe county; on the 6th September, 1878, plaintiff, "as such attorney for said Boyles, applied to said Willis Brewer for permission to inspect said books and records kept in the auditor's office by said Brewer, to-wit, a certain book called the 'Tax-Ledger,' in which the accounts of the various tax-collectors were kept and recorded; the same being a book required by law to be kept in said auditor's office, and the said Boyles having an account recorded in said book, between him, as tax-collector of said county for the year 1875, and the State of Alabama. And plaintiff avers, that said Willis Brewer, not regarding his duty in the premises, and without any lawful cause therefor, but wickedly, unjustly, and maliciously, and with intent to harass and injure plaintiff, refused to permit plaintiff to examine said Tax-Ledger, or the account of said Boyles for the year 1875 kept therein; and that by reason of said malicious refusal of said defendant to permit him to examine said account, he has been damaged in a large sum," &c.

2. Whereas defendant was State auditor, and had in his possession the books, records and papers required by law to be kept in said office, "it was his duty to keep said books, records and papers open for the inspection of all the citizens of the State having an interest in them, and the accounts and papers therein kept and recorded;" and plaintiff was an attorney-at-law, regularly licensed and practicing since 1872, "and as such represented various persons, to-wit, E. D. Lott, D. A. Moniac, J. F. Boyles, H. B. Still, and others, each of whom was then and there tax-collectors as aforesaid, having accounts with the State as such tax-collectors, which were unsettled, and for the settlement of which they had secured the services of plaintiff as an attorney-at-law; which said accounts were for various years, by and between said persons as tax-collectors, and which were kept and recorded in a book called the 'Tax-Ledger,' which was and is kept in said auditor's office, under and by authority of law. And plaintiff avers, that he demanded of said Brewer the right or permission to examine said Tax-Ledger, in which were kept

[Brewer v. Watson.]

the accounts of said Lott, Moniac, Boyles, and Still; but said Brewer, not regarding his duty in the premises, but wickedly, unjustly and maliciously refused to permit plaintiff to examine said ledger, and the accounts of said Lott, Moniac, Boyles, or Still, or either of them; to the damage of the plaintiff $10,000. And plaintiff avers, that he is an attorney, regularly licensed," &c.; and that the defendant, well knowing this, "and knowing that it was his duty to permit plaintiff to examine said Tax-Ledger, so kept by the auditor as aforesaid, wickedly, unjustly, maliciously, and without probable cause, but with intent to injure plaintiff in his calling as an attorney, refused to permit plaintiff to examine or inspect said ledger, and other books, records, or papers, in his possession, as said attorney for said persons who had employed him to examine their said several accounts in said ledger, for a large compensation, to-wit, $10,000; and by reason of defendant's said refusal to permit plaintiff to examine said accounts, and render his professional services for his said clients, plaintiff lost his said fees, which he would otherwise have earned; and in consequence of defendant's said refusal to permit plaintiff to examine said accounts, which was necessary to a proper and efficient rendering of his said professional services to his said clients, plaintiff was compelled to employ counsel, and institute proceedings in the City Court of Montgomery, to compel said Brewer, as such auditor, to permit plaintiff to examine said accounts, at a large expense, to-wit, $1,000; and said City Court commanded said Brewer to permit plaintiff to examine said accounts," &c.

There was a demurrer to the *complaint*, "in short by consent," assigning four grounds of demurrer. The court sustained the demurrer as to the right to recover counsel fees; and the complaint was amended, by making more specific allegations as to the counties and years for which Lott and the other persons named were tax-collectors. The other grounds of demurrer, which were overruled by the court, were in these words: "1. That the said complaint does not contain or set forth any facts which show that plaintiff has a right to recover the damages claimed by him in this suit." "4. That the said complaint does not contain or set forth any facts which show that plaintiff had a right to examine the Tax-Ledger, books, records and papers, authorized by law to be kept in the office of said defendant as auditor." The defendant then pleaded not guilty, and issue was joined on that plea.

On the trial, as appears from the bill of exceptions, the plaintiff was examined as a witness for himself, and testified (among other things) as follows: "In July, or August, 1878,

in reply to a letter from witness (plaintiff) to E. B. Lott, who was then tax-collector of Mobile county, calling his attention to errors in said Lott's settlements with the auditor, and offering to correct said errors, or to have them corrected, he was employed by said Lott, in July, or August, 1878, to represent him in settling said credits for him in his account with the State; and he was to receive, for his compensation under said employment, thirty-seven and one-half per-cent. on the credits procured by plaintiff to be allowed. On or about the 24th September, 1878, plaintiff went to the auditor's office, and asked Whitman, who was the chief clerk in the office, to let him see the 'Tax-Ledger,' in which are recorded the accounts between the State and the various tax-collectors. Whitman demanded to know, what account he wished to see; and plaintiff told him 'Boyles',' who was late tax-collector of Monroe county. Whitman then asked, if he had a power of attorney; to which witness replied, that he had not, but had a letter from said Boyles; and his recollection was, that he produced and read the letter." The letter was produced and read, being addressed by Boyles to plaintiff, and in these words: "Yours dated Sept. 15th is at hand. Regarding the amount you say is due me, please collect, and reserve your commissions, and forward remainder to me by registered letter." Plaintiff further testified: "The amount claimed by him, as due to Boyles, was about $130. Whitman, the clerk, said that defendant had instructed him not to let any one see the books, unless they had authority, and asked witness to wait until the return of defendant, who was then absent. Plaintiff then made a written demand, which he handed to said Whitman," and which was produced, demanding the right to examine the account of Boyles as contained in the ledger; but Whitman declined to make any indorsement on the writing, and urged him to await the return of the defendant. A day or two afterwards, as plaintiff further testified, he again went to the defendant's office, "and demanded, first as a citizen, and then as attorney, to see the 'Tax-Ledger' containing the account of said Boyles. Defendant asked, if he had a power of attorney. Plaintiff was indignant, and declined to show his authority to represent said Boyles. Defendant then said, that he approved what Whitman had done in refusing to allow plaintiff to see said Ledger and account of said Boyles;" and plaintiff then called in Geo. F. Moore as a witness, in whose presence the demand and the refusal were repeated. Plaintiff testified, also, that defendant refused to let him see the accounts of Dauphin (tax-collector of Covington), Lott (tax-collector of Mobile), and Moniac (tax-collector of Baldwin); that Lott had

employed him, as an attorney, to procure the correction of alleged errors and irregularities in his accounts, as stated by the former auditor, and agreed to pay him thirty-seven and one-half per-cent. on the amount of credits he might procure to be allowed ; that Moniac had also employed him, and agreed to pay him $500 for his services in correcting errors in his account. The defendant objected to the evidence as to the refusal to permit the plaintiff to examine the account of Dauphin, and reserved an exception to the overruling of his objection. Moore was introduced as a witness by the plaintiff, and testified, as to the demand and refusal in his presence, " substantially as plaintiff had done."

The plaintiff had been employed, for several months, as clerk in the defendant's office, prior to June, 1878 ; and he testified, " that he had free access to all the books and records kept in the office, from the time of his discharge, about the last of June, 1878, until said refusal by Whitman, as above stated ; that said Boyles had settled his account fully with the former auditor in 1875, but defendant claimed there were errors in said settlement, against Boyles, to the amount of about $135, and charged him with said sum ; that the amount of sales of land for taxes made by said Lott, for the years 1873 and 1874, was $58,000, of which sum defendant allowed him a credit for about $33,000, leaving about $25,000 charged to said Lott, of which sum about $4,000 was subsequently paid ; that the errors and insolvencies in said Lott's account during said years, as stated by the former auditor, amounted to about $60,000, of which sum defendant allowed him a credit of about $47,500, leaving said Lott charged with about $12,500 of the amount ; that the accounts of the said Lott, Moniac and Boyles are yet unsettled ; that he (plaintiff) still represented, as attorney, each one of the tax-collectors named in the complaint, and had never been discharged from his employment as a lawyer by any or either of them ; that he had been employed, since defendant's refusal to permit him to examine said ledger and accounts, to look after and guard the interests of Mobile county in the settlement of said Lott's account ; and that he had received, for his said services to Moniac, two promissory notes, of $250 each." The plaintiff offered in evidence " a transcript of the record in the case of *Brewer v. Watson,* decided by the Supreme Court at its december term, 1878," which is reported in 61 Ala. 310 ; and the court having admitted it, against the· objection of the defendant, he reserved an exception to its ruling. The plaintiff offered in evidence the deposition of E. B. Lott, which had been taken on interrogatories. At the time of filing cross-interroga-

[Brewer v. Watson.]

tories, the defendant had objected to several of the inter-
rogatories, as calling for illegal and irrelevant evidence; and
when the deposition was offered by the plaintiff, the defend-
ant renewed these objections, and also moved to suppress
portions of the answers as not responsive.   Among the
answers objected to, but without specifying any ground of
objection, was the following: "Plaintiff told me, that defend-
ant refused to let him examine the books in his office."   An
exception was duly reserved to the overruling of this objec-
tion, as also of each of the other objections.   The testimony
of said Lott related mainly, if not entirely, to the contested
items in his account as tax-collector, which had been audited
and allowed by the preceding auditor, but which the defend-
ant, as auditor, contended · had been erroneously allowed;
and he also testified to his employment of the plaintiff as
his attorney, as stated by the plaintiff.

The defendant testified, as a witness for himself, that he
had employed the plaintiff as a clerk in his office, for sev-
eral months during the year 1877, and again during the year
1878, "and discharged him when the business of the office
no longer required his services, and for that reason alone;
that plaintiff, when discharged the last time, seemed very
mad, and told defendant he would always hate him, and
would injure him all he could, and would get defendant's
name taken off the State ticket as candidate for auditor."
He testified, also, "that on the 24th September, 1878, and
before that time, important negotiations were pending with
various tax-collectors, in relation to collecting or settling
back taxes due to the State; that these negotiations, and the
collection of the revenues of the State, had been interrupted
by the correspondence of plaintiff being carried on with
said tax-collectors, especially with the tax-collector of
Mobile county; that being informed of this fact, and for this
reason, he instructed said Whitman, his clerk, to lock up
the ledger containing the accounts of the tax-collectors, and to
allow no one to examine it, unless they were interested therein,
and showed their authority for examining it; that said plaintiff
came to his office, on or about the 25th September, 1878, and
demanded to see the ledger containing the account of said
Boyles, but asked to see no other account; that he (defend-
ant) demanded his authority to see said ledger and account,
and plaintiff declined to show any authority, and defendant
then refused to let him see said book or accounts; that he
never refused to let plaintiff see the account of Lott, Moniac,
or any other one than Boyles; that plaintiff had free access
to said books for two months immediately before said refusal,
and had been there so frequently as to be annoying; that in

said ledger, at the places where the accounts of said Lott and Moniac were kept, the pages were soiled by their constant inspection, and he thought this was done by plaintiff; that plaintiff's usual manner, when he visited defendant's office, was rude and overbearing; that he (defendant) was often provoked and indignant at his conduct, but bore him no malice, and did not refuse to let him see said book and said accounts, except to protect the public interests, as above stated." The defendant offered to prove, also, that he had made a full statement of the facts to an attorney, before refusing to plaintiff access to said books in his office, and acted under his advice in said refusal; and he reserved an exception to the exclusion of this evidence.

The defendant asked numerous charges in writing, of which the following were refused : "1. That the defendant being a public officer, whose compensation for his services is a yearly salary fixed by law, and who is not compensated for any service or duty pertaining to his office in any other manner, unless the jury find from the evidence that he· refused to allow plaintiff to see and examine the said ledger maliciously, and with the intent to injure said plaintiff, they must find for the defendant."

"2. That unless the jury find, from the evidence, that defendant knew, at the time of plaintiff's application, that the plaintiff was the authorized attorney of the said tax-collectors named in the complaint, and, knowing the same, still refused to allow plaintiff to [examine] said book, maliciously, and with intent to injure him, then the jury must find for the defendant.

"3. That it is the right of the State auditor to refuse or decline, either to grant copies, or to allow an inspection of original accounts or records in the books of his office, whenever such permission would injuriously affect any important public interest; and if the jury find, from all the evidence, that the defendant believed any injury to the public interest might accrue from allowing plaintiff to examine said book or ledger, and that for such reason defendant refused to permit plaintiff to examine said book, then the jury must find for the defendant."

"9. That the defendant is the auditor of the State of Alabama, and is not liable in this action, if he fell into error by his refusal to permit plaintiff to inspect said tax-ledger kept in his office, in relation to the examination of which it was his duty to exercise judgment and discretion, even though plaintiff may have been injured by the mistake."

"10. If the jury believe, from the evidence, that the defendant, in refusing plaintiff permission to examine said

[Brewer v. Watson.]

tax-ledger in his office, acted in accordance with his best judgment, for the protection of the interest of the State, and with no intention to injure the plaintiff, then they must find for the defendant."

"11.　That the damages given to a plaintiff for a wrongful act, by which he alleges he was injured, arise from the natural and proximate consequences of the act complained of; and in estimating the said damages, the profits which might have accrued to the plaintiff, but for the act complained of, can not be considered by the jury."

"12.　That if the jury believe, from the evidence, that the plaintiff has not been discharged by any of his clients mentioned in his complaint, and that the accounts of the said persons still remain open and unsettled in the auditor's office, which accounts the plaintiff was employed to examine and adjust, they may consider these facts in estimating the damages alleged to have been sustained by the plaintiff."

"13.　That while the plaintiff may have had a right to inspect the accounts of his clients, kept in the auditor's office, yet, if the jury believe, from the evidence, that such inspection or examination of the accounts on the ledger would injuriously affect any important public interest, such as might be involved in a grave pending negotiation, the auditor might lawfully refuse to allow an inspection of the original; and if the jury further believe, from the evidence, that such a negotiation was pending, the plaintiff can not recover in this action."

"14.　If the jury believe, from the evidence, that the only employment plaintiff had from Boyles was to collect money, then defendant had a right to demand of plaintiff a power of attorney, before allowing him to examine the accounts of said Boyles."

The refusal of these several charges, to which exceptions were duly reserved, the rulings of the court on the evidence, and the overruling of the demurrer to the complaint, are the matters now assigned as error.

John W. A. Sanford, and Cook & Enochs, for appellant.

R. M. Williamson, G. F. Moore, and T. H. Watts, contra.

SOMERVILLE, J.—The auditor of the State of Alabama is a public officer, who receives a salaried compensation for his services to the State. He is denominated in the constitution as an executive officer, but many of his duties are ministerial, and others are quasi judicial. In many cases, it is difficult to declare whether certain of his official acts

fall within the one or the other of these classes.—Code (1876), §§ 83–100.

Among the other duties imposed by statute, is that of "keeping a book, in which he shall make an entry of the amount of taxes received from each county, and from whom received.—*Ib.* § 83. The custody of this book, which is alleged, in the complaint in this suit, to be known as the "Tax-Ledger," has been held by this court to involve a ministerial duty; and it has been decided that *mandamus* will lie by a tax-collector, or his authorized attorney, to compel its inspection, where a proper interest is shown in its contents by the petitioner.—*Brewer v. Watson*, 61 Ala. 310. What limitation there may be upon this right, and under what circumstances it may, if ever, be regulated by official discretion, is a question that does not arise in this case, nor was it considered in the case *supra.*

So far as concerns *ministerial* duties, Wharton, in his Commentaries on Agency, declares the rule to be as follows, and, we think, correctly so: "An individual, who has suffered harm from the negligence of a ministerial officer, within the range of the latter's official duty, may recover *compensatory* damages from the officer. Nor, in such case, is it necessary to prove malice."—§ 547; *Kendall v. Stokes*, 3 How. (U. S.) 87.

And it is clear from the authorities, that where such officer acts in good faith, he is not liable to *exemplary damages*, but only for *actual loss.*—*Plummer v. Harbut*, 5 Clarke (Iowa), 308. "I consider the point beyond all dispute," says SPENCER, C. J., in *Butler v. Kent*, 19 John. (N. Y.) p. 223, "that for a misbehavior of an officer, in his office, either from misfeasance or non-feasance, no one can maintain an action against him, unless he can show a *special* and particular damage to himself. Without such special and particular damage, he has no title to call the officer to account."

And in the case of a State executive officer's undertaking the performance of incidental duties, which involve the exercise of *judgment or discretion*, and are imposed by law, it may be well questioned whether he would be answerable in damages for the consequences of his acts, *unless* they are perpetrated *maliciously, and with intent to injure.*—*Burton v. Fulton*, 49 Penn. St. Rep. 151.

The complaint, in this case, alleges, that the injury complained of was done "maliciously, and with intent to injure" the plaintiff; and there can clearly be no recovery of exemplary or vindictive damages, without proof of this particular averment, even though the duty in question be a ministerial one. And we may add, that if any other doctrine should obtain, than that here declared, and rules of law were based

upon supposed official infallibility, few men, fit for such positions, could be induced to accept public trusts of this character.

These are the leading principles which apply to the questions raised, and which must ultimately decide the rights of the parties in this cause. It is needless to consider all of the exceptions that appear in the record. The first charge asked by appellant was properly refused, because nominal or compensatory damages might have been recoverable, without any malice or intent to injure on defendant's part. The second charge requested was not correct. It was not necessary for defendant to have *known* that the plaintiff was the authorized attorney of the tax-collector. It was sufficient if he had reasonable ground to be advised of the alleged agency. The third and the thirteenth charges were abstract, and properly refused. There was no evidence disclosing the fact that the inspection of the public records by plaintiff would have injuriously affected the public interests. The ninth and tenth charges seek the improper application of a principle, to which there would have been no objection, if the duty, of which a breach is claimed, had been *discretionary*, and not ministerial. The court did not err in refusing them. The eleventh charge was properly refused, because it precluded the jury from allowing " profits," or mere remuneration, as part of the *actual* damages. The court erred in refusing to give the twelfth charge requested. The evidence tended to show, that there was a mere *suspension* of the duties and rights of the plaintiff, concerning which this action originated, and not an uninterrupted interference with the one, or total abrogation of the other. This fact was relevant in determining the extent of plaintiff's alleged injury, and the measure of his damages. It tended to prove such damages to be merely nominal, and in the absence of malice, coupled with an intent to injure plaintiff, the jury were authorized so to find.

The evidence relating to Lott's alleged claim against the State was not relevant, and the several objections to its introduction should not have been overruled. It was probably introduced in connection with the fact that plaintiff was to receive a fee, graduated by a certain per-centage on the amount he procured to be allowed by the auditor. This compensation was based upon the contingency of its future allowance by this official. The connection between the principal and evidentiary facts here is too remote and conjectural. There must be a plain and manifest connection between the issue in controversy and the collateral facts introduced to sustain or rebut it. The evidence must have a proximate tendency to establish the proof or disproof of this principal

issue, and must not be so indefinite or speculative as to be incapable of affording the jury a reasonable presumption or inference of its truth or falsity.—1 Best on Ev. §§ 90, 251-2; 1 Greenl. Ev. § 52; *State v. Wisdom*, 1 Port. 511.

Before the plaintiff, under his agreement, could obtain compensation for the services proposed to be rendered to Lott, there must have been a valid claim against the State, and its allowance by the auditor must have been procured by him. It was denied that any part of the claim was due, and it was not permissible to enter upon the trial of this collateral issue, as it would tend too much to divert the mind of the jury from the principal issue in this action.

The testimony of Lott, that "plaintiff *told me* that defendant refused to let him examine the books in his office," was mere hearsay, and should have been excluded on defendant's objection.

The first ground of demurrer in this case was correctly overruled by the circuit judge. It failed to comply with the statute, which requires a distinct specification of all causes of demurrer that may be interposed.—*Robbins v. Mendenhall*, 35 Ala. 722; Code (1876), § 3005.

For these erroneous rulings of the Circuit Court, the judgment is hereby reversed, and the cause remanded.