# Brewer *v.* Watson.

*Action against Auditor for Refusal to allow an Attorney to inspect Public Records in his Office.*

1. *Books and documents of public office; right of inspection.*—While the books and documents of a public office are the property of the public, and are preserved for public uses and purposes, it is not the unqualified right of every citizen to demand access to, and inspection of them; but, to entitle one to an inspection of such books and documents, other than judicial records, he must show that he has an interest therein, and desires an inspection thereof for a legitimate purpose.

2. *Same; what is; right of attorney to inspect.*—The book kept by the Auditor of the State, in obedience to the requirement of the statute, for the purpose of entering the accounts of tax collectors with the State, is a public record; and an attorney at law, employed by an ex-tax collector

[Brewer v. Watson.]

to represent him on a settlement of his accounts with the Auditor, has an interest which entitles him to an inspection of the accounts of his client as entered in such book.

3. *Same; when Auditor may demand evidence of attorney's authority.* But the Auditor may demand of the attorney satisfactory evidence of his authority to represent the tax collector, and may, if he fail or refuse to furnish it, decline to allow an inspection of the accounts by him. In such case, the presumption of authority obtaining in courts, arising from the attorney's license, and from the fact that he is an officer of court, can not be claimed.

4. *When witness can not testify to his belief.*—In an action against the Auditor by an attorney, to recover damages alleged to have been suffered by the attorney on account of the Auditor's refusal to allow him to inspect the records in the latter's office, in which were kept the accounts between the State and certain tax collectors represented by the attorney, it is not permissible for either the defendant or his clerk to testify to the *belief* either may have had as to the plaintiff's employment, or as to his authority to represent the tax collectors. If such belief were a material fact in the case, it is an inference to be drawn by the jury from the circumstances which may be in evidence.

5. *Inspection of public documents in Auditor's office; when right to not forfeited.*—The inspection of public documents can not be denied merely on the ground that the party applying for it has been guilty of some past impropriety of conduct as to matters to which such documents may refer, nor because it is apprehended that the information obtained will be employed in litigation with the State; and hence, in an action by an attorney, founded on the Auditor's refusal to allow him to inspect the accounts of tax collectors whom he represented, as entered on books in the Auditor's office, the fact that the attorney had previously availed himself of his knowledge of the contents of the books in the office, however derived, to interfere with negotiations the Auditor was conducting with others, can not deprive his clients, or him as their representative, of the right to examine into their accounts.

6. *Same; when reason for refusal to allow inspection, admissible to negative malice.*—Although such fact may not have been relevant as establishing a justification of the refusal, yet, the complaint averring that the refusal was malicious and with the intent to injure the plaintiff, it was admissible for the purpose of rebutting or negativing malice, it having a fair and reasonable tendency to show that the defendant acted from a good motive and in good faith.

7. *When information on which a party acts admissible in evidence.*—In such case, information of the attorney's interference with the Auditor's negotiations for settlements with others than the attorney's clients, although derived from correspondence or verbal communication with such other parties, is competent evidence for the Auditor; as the specific fact to be shown was not the truth of the information, but the fact of its communication to the Auditor, and that he acted upon it in denying the attorney access to the books of his office.

8. *Good faith in action for exemplary damages; effect of.*—The good faith of the Auditor, in such case, in refusing the inspection may relieve him from the imputation of malice, and acquit him of liability for vindictive or exemplary damages; but it can not relieve him of liability for actual or compensatory damages.

9. *When charge properly refused.*—A charge to the jury, requested by either party, which is involved and ambiguous, and has a tendency to mislead and confuse the jury, is properly refused.

APPEAL from Lowndes Circuit Court.

Tried before Hon. JOHN MOORE.

This action was commenced on 3d April, 1879, by Charles J. Watson against Willis Brewer, to recover damages alleged to have been suffered by the plaintiff, resulting from the refusal of the defendant, while Auditor of the State, to allow him access to, and an inspection of certain public records belonging to the Auditor's office, containing accounts between the State and one J. F. Boyles, as tax collector of Monroe county, and tax collectors of other counties, who had employed plaintiff, an attorney-at-law, to represent them in certain matters of dispute touching said accounts. The cause was before this court at a former term, and is reported.—*Brewer v. Watson*, 65 Ala. 88. In the report of the case on that appeal the complaint is fully set out. The defendant's plea is not contained in the record on this appeal. After the cause was remanded, a second trial was had, resulting in a verdict and judgment for the plaintiff.

As shown by the bill of exceptions, the evidence introduced on the trial tended to show, that the defendant, after he became Auditor of the State, revised the settlements of the accounts of tax collectors of different counties of the State, made with his predecessor in office, and had, in many cases, undertaken to correct what he supposed were erroneous allowances made to them, by charging them with such items in the account of the then current year; that some five or six of the tax collectors whose accounts had thus been revised, among whom was the said Boyles, had employed the plaintiff as their attorney to represent them in the settlement of their accounts, and to have all items thus charged against them from former settlements "expunged from their present accounts;" that on 24th September, 1878, plaintiff, under this employment, called at defendant's office, "as he had frequently done before," to look at the account of said Boyles on the tax-ledger in the defendant's office, and, the defendant not being present, asked the clerk in charge for leave to look at it, who replied that the Auditor, the defendant, had directed him to lock up that book, and to permit no one to see it, unless he had an interest therein, and that under these instructions he could not show it to plaintiff, unless he had a power of attorney from Boyles to represent him; he also requesting plaintiff to wait until defendant returned home; that plaintiff assented to this, but left with the clerk for defendant a written demand for "the privilege to examine the tax-ledger for the years 1874, 1875, and 1876, containing the accounts of J. F. Boyles, ex-tax collector of Monroe county;" that on the next day plaintiff returned and, finding the defendant in his office, asked him whether he had received the written demand which he had left for him, to which defendant replied that he had, and further stated that "he would not per-

[Brewer v. Watson.]

mit plaintiff to examine the tax-ledger unless he had a power of attorney;" that thereupon plaintiff, in the presence of another whom he had called in, renewed · his demand to inspect said ledger, and was again refused, unless he had a power of attorney; and that prior to these interviews the plaintiff had received a letter from said Boyles, directed to him, dated 21st September, 1878, in these words: "Yours dated Sept'r 15th, is at hand, regarding the amount you say is due me. Please collect, reserve your commissions, and forward the remainder to me." The evidence for the plaintiff tended to show that, in the above mentioned interviews, the plaintiff told the defendant and his clerk, that he had no power of attorney, but that he had received said letter from Boyles, and that he showed it to both of them; but the evidence for the defendant tended to show that he neither showed the letter, nor said any thing about it in ·either interview. The evidence showed further that the plaintiff, prior to the dates of said conversations, had been in the ·employment of the defendant, as a clerk in the Auditor's office, · but had quit such employment, and was engaged in practicing law. Evidence was also introduced by the plaintiff, tending to .show that he had been damaged by the refusal of the Auditor to allow him to inspect said ledger, and the extent of such damage.

The defendant, after introducing evidence tending to show that his action, in refusing to allow plaintiff to examine the tax-ledger, was not prompted by malice or other evil motive, offered to prove, as his reason for such refusal, "that, at and prior to · the said demand, important negotiations were going on for settlements of accounts with tax collectors and probate judges; that these negotiations had been suddenly interrupted; that defendant was informed by letters, which were produced and offered in evidence, from tax collectors and probate judges who were about settling their balances, that some person had written to them not to pay, and that there was no necessity to pay, and that this person was the plaintiff, and stating this as the reason why they would not pay; that this intermeddling was greatly to the hinderance of the collection of the taxes, and was the reason why defendant denied access to the ledger, except to those showing an interest therein, or an authority to represent those interested; that he demanded such authority from plaintiff, and he exhibited none to him; and that this was the reason of his refusal." To this evidence the plaintiff objected; his objection was sustained, and the defendant excepted. The substance of this offered proof was sought to be introduced in other forms, which need not be stated. "The court, however, allowed defendant to testify to the fact that important negotiations were going on, and that they were broken off, and that

defendant was annoyed thereby; and that plaintiff did not, at the time of said demand, exhibit any authority to represent any person having an account in said tax-ledger." The defendant also reserved an exception to the refusal of the court to allow him to show that, at the time of the respective interviews between plaintiff and defendant, and his clerk, above mentioned, neither he nor his clerk believed that plaintiff had been employed by Boyles in the matters referred to, or that he had any authority to represent Boyles.

The defendant also reserved exceptions to the refusal of the court to give the following charges to the jury, requested in writing by him: 1. "That such a public officer as the Auditor, in dealing with persons representing others, is not bound to accept the statement of such parties as to the fact of such employment." 2. "That if from the evidence the jury believe that the defendant may have honestly believed that an inspection of the tax-ledger by the plaintiff was more calculated to be prejudicial to the public interests, than an inspection by other persons not so familiar with the business in the auditor's office, then the jury may look at that fact in determining whether or not the defendant was actuated by malice in refusing an inspection of the tax-ledger by the plaintiff." 3. "That if the jury believe that the defendant refused plaintiff's demand honestly and *bona fide*, in the public interest, and from a sense of his duty as a public officer, then the defendant is not liable." Another charge requested by the defendant, numbered 5, was also refused, to the refusal of which the defendant excepted; but the view taken of this charge renders it unnecessary to set it out.

The rulings of the Circuit Court above noted are here assigned as error.

Cook & Enochs and Gunter & Blakey, for appellant.

Watts & Sons, R. M. Williamson, and Geo. F. Moore, *contra*.

(No briefs came to the hands of the reporter.)

BRICKELL, C. J.—We regard it as settled, that the book kept by the auditor, in obedience to the requirement of the statute, in which he enters the accounts of the tax collectors with the State, is a public writing or record, subject to the inspection of any citizen having a legitimate interest, which an inspection will subserve. It is also settled, that an attorney-at-law, employed by a tax collector whose office has expired, to collect a balance due from the State, or claimed to be due, has

[Brewer v. Watson.]

an interest which entitles him to an inspection of the accounts of his client.—*Brewer v. Watson*, 61 Ala. 310. It is not the unqualified right of every citizen to demand access to, and inspection of the books or documents of a public office, though they are the property of the public, and preserved for public uses and purposes. The right is subject to the same limitations and restrictions, as is the right to an inspection of the books of a corporation, which strangers can not claim, and which is allowed only to the corporators, when a necessity for it is shown, and the purpose does not appear to be improper.—1 Greenl. Ev. § 474; Ang. & Ames on Cor. §§ 681-2. And the individual who claims access to public records and documents (not judicial records, of which, by statute and unvarying usage, the custodian, upon the payment of the fee allowed by law, is bound to furnish copies), can properly be required to show that he has an interest in the document which is sought, and that the inspection is for a legitimate purpose.—1 Whart. on Ev. § 745; 1 Greenl. on Ev. 475; 1 Tidd's Prac. 593; Gres. Eq. Ev. 115.

In the present case, the inspection was demanded by the appellee as an attorney for several tax collectors An individual interest in the accounts he sought to examine, was not claimed; the right was asserted wholly in a representative capacity. The usual office and duty of an attorney-at-law is the representation of parties in courts of justice. It is for this purpose that he is licensed under the authority of the State. When he appears in a court of the State granting the license, the appearance is presumed to be authorized. Against an unauthorized appearance the court can afford protection to its suitors, and the attorney making it could be summarily punished for contempt. The court, of its own motion, or the opposite party may require that the attorney produce evidence of his authority.—Whart. on Agency, § 563; Code of 1876, § 798. When the attorney is not appearing for a party in a court of justice; when his representation is for the transaction of business elsewhere, and business which would lie in the scope af an ordinary agency which any person is capable of transacting, the presumption of authority obtaining in court, arising from his license, and because he is an officer of the court, can not be claimed. Strangers can not safely deal with him on the faith of such representation, and have the right to demand from him some reasonable and satisfactory evidence of his authority—other evidence than his mere assertion. If the Auditor had accepted and acted upon the bare representation of the appellee, that he was the attorney of the several tax collectors whose accounts he proposed to examine, the representation would have been disputable by the collector, and each of them, if it was untrue, could the next hour or the next day have demanded the same in-

[Brewer v. Watson.]

spection from the Auditor. Any agent or attorney, proposing to transact business of any kind for his principal with others, can be required to furnish some satisfactory evidence of his authority. It is neither just nor reasonable to demand that those with whom he proposes to deal should accept and act upon his mere assertion of authority; and if he refuses to furnish such evidence, the transaction of business with him may be properly refused. We are, therefore, of opinion that the Circuit Court erred in its refusal of the first instruction to the jury requested by the appellant.

It was not, however, permissible for the appellant, or witness Whitman, his clerk, to state the belief either may have had as to the employment of the appellee, or as to his authority to represent Boyles, or other tax collectors. The question has been often considered in this court, and such evidence has been uniformly pronounced inadmissible. Whether the appellant believed the appellee had the authority asserted, if a material fact, is an inference to be drawn by the jury from the circumstances which may be in evidence.— *Whetstone v. Bank at Montgomery*, 9 Ala. 874.

The individual demanding access to, and inspection of public writings must not only have an interest in the matters to which they relate, a direct, tangible interest, but the inspection must be sought for some specific and legitimate purpose. The gratification of mere curiosity, or motives merely speculative will not entitle him to demand an examination of such writings. 1 Whart. on Ev. § 745; *King v. Merchant Tailors' Co.*, 2 Barn. & Ad. 115; *King v. Justices Staffordshire*, 6 Ad. & Ell. 84; *Ex parte Briggs*, 1 Ell. & Ell. 881 (102 Com. Law, 879); *People v. Walker*, 9 Mich. 328.

The office of Auditor is by the constitution declared a part or a branch of the executive department of the State. The duties he is required to perform relate almost exclusively to the fiscal affairs of the State, of which he has a general superintendence. Among other duties he is required to perform, is the audit and adjustment of the accounts of all public officers, and the keeping of a regular account with every person in the State charged with authority to receive any part of the public revenue. The book in which these accounts are entered is obviously of the highest public value and importance, and is of value and importance to each individual whose account is therein entered. It would be idle to expose it to the impertinent intrusion of any and every person who might claim access to it; and it would be inexcusably wrong to withhold it from the examination of such persons as proved that they had some specific, direct, tangible interest, an inspection would subserve. For the public, and for persons showing such in-

[Brewer v. Watson.]

terest, the Auditor should, as should every custodian of public writings, regard himself as a trustee—preserving them for the public against all impertinent intrusion, allowing ready access to those who have interest, and claim access for the purpose of promoting or protecting it.   Even to such persons access may be withheld, if the disclosure sought would prove detrimental to the public interests.   As a witness, in such a contingency, the custodian of writings would be privileged from testifying to facts shown by them, or information obtained from them.

The evidence offered in various forms for the purpose of showing that access to the accounts of his clients was withheld from the appellant, because negotiations were pending between the Auditor and tax collectors and judges of probate, for a settlement of balances claimed to be due from them to the State, and that such negotiations had been broken off by the interference of the appellee, was excluded.   It was not shown, or offered to be shown, that these negotiations were being conducted with either of the clients of the appellee, whose accounts it was proposed to inspect.   It was the right of the client to inspect his accounts with the State as kept by the Auditor, and which, if kept in the regular course of official duty, were *prima facie* evidence for and against the client, the appellee asserted, and not his individual right.   If the appellee had demanded a general inspection of the books or writings in the office, or of a particular book, in all the entries of which a direct interest was not shown, the generality of the demand would have justified its refusal.   But that he had availed himself of his knowledge of the contents of the books, however derived, to interfere with negotiations the Auditor was conducting with others, could not deprive his principals of the right, or deprive him of the right, as their representative, to examine into their accounts.   The inspection of public writings may not be denied, because the party applying for it has been guilty of some past impropriety of conduct as to matters to which such writings may refer, or because it is apprehended that the information obtained will be employed in litigation with the State.—*People v. Throop*, 12 Wend. 183.   If the evidence tended to show that the purpose of the appellee was not really an ascertainment of the state of the accounts of his principals, but was the annoyance of the appellant, or of his clerks, or that the purpose was fishing and speculative, the hope of finding material for contingent litigation, a different question would arise, and the refusal of the Auditor to allow the inspection would probably be justified. .

But, although the evidence may not have been relevant as establishing a justification, it had a direct bearing upon the inquiry into the motive and good faith of the refusal.   These

[Moore v. The State.]

were directly involved, for the averment of the complaint is, that the refusal was *malicious* and with the *intent to injure* the appellee. When malice is imputed and is an element of recovery, whatever circumstances have a fair and reasonable tendency to show that the party to whom it is imputed acted from a good motive and in good faith, ought to be received.—*Barron v. Mason*, 31 Vt. 189; 2 Greenl. on Ev. § 454; *Burns v. Campbell, ante* p. 271. The information of the interference of the appellee with the negotiations for settlements with tax collectors and judges of probate, may have been derived from, correspondence or verbal communication with them. The specific fact to be shown was not the truth of the information, but the fact of its communication to the appellant, and that upon it he acted in denying the appellee access to the books of his office. Hearsay evidence, the unsworn statements of others, whether verbal or written, is not competent evidence of a specific fact. That species of evidence is easily distinguished from evidence of information on which a party acts, when the inquiry is not into the truth of the information, but into the fact of its communication and his good faith in acting upon it. 1 Greenl. on Ev. §§ 100–101. To repel the imputation of malice, the evidence was admissible. The second instruction requested, in this view, ought to have been given.

The third instruction requested was properly refused. The good faith of the appellant in refusing the inspection may relieve him from the imputation of malice, and acquit him of liability for vindictive or exemplary damages, but it can not relieve him of liability for actual or compensatory damages, if it be shown the refusal was wrongful.—*Brewer v. Watson*, 65 Ala. 88.

The fifth instruction is involved and ambiguous. It had a tendency to mislead and confuse the jury, and for this reason was properly refused.

For the errors pointed out, let the judgment be reversed and the cause remanded.