[Strang v. Moog.]

# Strang *v.* Moog.

*Ejectment by Mortgagee against Mortgagor.*

1. *Conclusiveness of decree dismissing bill.*—When a bill in equity is dismissed for want of jurisdiction, or because the complainant has a plain and adequate remedy at law, or because of any mere defect in the pleadings, or, generally, on any other ground not involving the merits, such dismissal is usually stated to be "without prejudice," and is not held to be a final and conclusive adjudication of the matters in litigation; but, when a bill is dismissed on the merits, the decree is final and conclusive, like a judgment at law, not only as to all facts or issues actually decided, but as to all points necessarily involved in the matter adjudicated.

2. *Res adjudicata, at law and in equity.*—In the application of the principle of *res adjudicata*, there is no difference between courts of law and courts of equity: when an issue of fact, or of law, has been adjudicated on the merits in either tribunal, it can not be again litigated in the other.

3. *Dismissal of bill by plaintiff.*—By the 31st Rule of Chancery Practice (Code, p. 166), which follows the English rule, if the complainant cause his bill to be dismissed on his own application, after the cause is set down for hearing, "such dismissal is, unless the court otherwise orders, equivalent to a dismissal on the merits, and may be pleaded in bar to another suit for the same matter."

4. *Conclusiveness of decree dismissing bill.*—When a bill assails the validity of a mortgage on the ground that the consideration was an illegal agreement to suppress a criminal prosecution, a decree dismissing it on the merits, because the proof failed to sustain the allegations, is conclusive as to that issue; and it can not be again litigated in an action at law founded on the mortgage.

5. *When mortgagee may maintain ejectment; demand, or notice to quit.* After the law-day of a mortgage, default having been made in the payment of the secured debt, the mortgagee may maintain ejectment for the property, without a previous demand, or notice to quit first given to the mortgagor.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. WM. E. CLARKE.

This action was brought by Bernard Moog, against Mrs. Julia A. Strang, to recover certain lots or parcels of land in the city of Mobile, particularly described in the complaint; and was commenced on the 13th May, 1882. The complaint contained a count on a demise from said Bernard Moog, who derived title under a mortgage executed to him by Mrs. Strang, the defendant, and a count on a demise from M. J. Goldsmith, who claimed as purchaser at a sale made under a power in the mortgage; but, as the bill of exceptions states, "the sale being void, on account of the insufficiency of the advertisement, the court stated that the plaintiff must recover, if at all, on the title of Moog as mort-

gagee, and to this title alone the charge in this case was directed."

On the trial, the plaintiff read in evidence the mortgage executed to said B. Moog by the defendant, which was dated 1st July, 1878, and conveyed the lots now sued for, with power of sale, as security for the payment of a promissory note for $3,841, executed by Dudley Hubbard, of even date with the mortgage, and payable two years after date, to said B. Moog or order, at the Bank of Mobile. "Plaintiff then proved that said mortgage debt was still due and unpaid, and that said defendant was in possession of the lots sued for at the time said mortgage was made; also, the value of the use and occupation from the commencement of the suit. Plaintiff having rested his case upon this evidence, the defendant's counsel announced to the court that he proposed to establish the following two defenses: 1st, that the said mortgage to Moog was void, because the only consideration upon which it was based was an agreement made by said Moog to suppress a criminal prosecution; 2d, that said mortgage was void, on account of a fraud in its execution, which said Moog had devised and accomplished. At this stage of the proceedings, plaintiff offered in evidence a transcript of the proceedings in a certain cause decided in the Supreme Court of Alabama, wherein Bernard Moog was appellant, and said Julia A. Strang was appellee, as *res adjudicata* of the issues therein decided; which issues, plaintiff claimed, embraced the two defenses which defendant proposed to make in this case. Said transcript is made a part of this bill of exceptions, marked *Exhibit C.* Defendant objected to the introduction of said transcript for the purpose for which it was offered, or for any purpose; which objection the court overruled, after argument, and admitted said record as *res adjudicata* of all issues decided by it; to which ruling the defendant excepted."

The transcript of the cause shown by the exhibit was the case of *Moog v. Strang*, reported in 69 Ala. 98–102. The bill in that case was filed by Mrs. Strang for the purpose of obtaining a cancellation of the said mortgage, on the ground that its execution was procured by undue influence, and duress *per minas;* and that its only consideration was an illegal agreement, in which Moog participated, to suppress a criminal prosecution against said Dudley Hubbard, who was the son-in-law of Mrs. Strang. Hubbard had been the cashier of the National Commercial Bank of Mobile, and Moog was one of the sureties on his bond. In May, or June, 1878, it was ascertained that Hubbard was a defaulter to the bank, to the amount of nearly $10,000; and in the settlement of the controversy growing out of this matter, Moog advanced to Hubbard, or to the bank for him, the amount for which Hubbard executed his said note, and Mrs. Strang exe-

[Strang v. Moog.]

cuted the mortgage to secure its payment. The prayer of the bill was in these words: "In consideration of the premises, your oratrix prays that your honor will declare the said mortgage to be null and void, for the reason that your oratrix was forced to execute the same under duress and undue influence, which she had no power to withstand; or, if your honor should not consider this a sufficient reason for annulling said mortgage, that your honor will declare the same to be void, because the only consideration upon which it was based was illegal, both by the statute and the common law; and your oratrix prays that your honor will remove said mortgage, as a cloud upon the title of your oratrix;" and for other and further relief, under the general prayer. There was a demurrer to the bill, which was overruled; and on final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief as prayed, and rendered a decree declaring the mortgage null and void; but this court, on appeal, reversed his decree, and dismissed the bill, as shown by the report of the case. The opinion of this court was not included in the transcript.

"After said record had been so admitted in evidence, the defendant's counsel announced, that he proposed to prove that said mortgage was void, because of fraud in its execution; and in support of this issue, defendant began by offering evidence of the mental *status* of said defendant at the time said mortgage was executed. The court admitted this evidence, saying that the question whether, at the time of the execution of the mortgage, the defendant was *non compos mentis* or not, was not adjudicated in the said record offered by plaintiff. After all the evidence upon this question had been introduced, the defendant proposed to prove by A. A. Winston, the president of the National Commercial Bank, who was on the stand as a witness for her, that Dudley Hubbard had resigned as cashier of said bank. To this question plaintiff objected, on the ground that it was irrelevant. The court then asked the defendant to show its relevancy; and the defendant said, that she expected to prove fraud in the execution of the deed, in this way: first, that her mind was greatly weakened by age, if not entirely gone, and that said Moog, while she was in that condition, devised and concocted with said bank a deliberate scheme or design to defraud her, by forcing her, by threats of prosecuting said Hubbard, into the execution of the mortgage in question; and that the question addressed to Winston was intended to bring out the starting point of such conspiracy. The court then sustained plaintiff's objection to the question, and the defendant excepted."

"After the main charge in the case had been given, the defendant requested the following charge, which was in writing: 'The plaintiff in this case claims as mortgagee, and must recover

as such, if at all.   He has failed to prove that he gave any
notice to quit to Mrs. Strang, the defendant, before the bring-
ing of this suit.   I therefore charge you, that, unless this notice
was given before the bringing of the suit, Moog can not re-
cover in this case.'   The court refused to give this charge, and
the defendant excepted to its refusal."

The rulings of the court on the evidence, to which exceptions
were reserved, and the refusal of the charge asked, are now as-
signed as error.

HANNIS TAYLOR, for appellant.—(1.) The doctrine of *res ad-
judicata* only applies where the controversy is between the same
parties, or their privies, and the issues involved are identically
the same.—*Boyd v. The State*, 53 Ala. 614; Wells' *Res Ad-
judicata*, 308–09.   The object and purpose of the chancery
suit was simply the removal of the mortgage as a cloud on the
complainant's title, and the title itself was not adjudicated; nor
could it have been adjudicated, since the court had no jurisdic-
tion over that question.—*Bennett v. Holmes*, 1 Dev. and Bat.
486 ; *Fulton v. Hanlon*, 20 Cal. 451 ; *Phelps v. Harris*, 51
Miss. 789 ; *Phelps v. Harris*, 11 Otto, 370, and cases there
cited.   When a party seeks to enforce a strictly legal right or
title in a court of equity, when his remedy is at law, the dis-
missal of his bill is merely a declaration that he has no equity,
but decides nothing and concludes nothing as to his legal title.
*Wright v. Deklyne*, 1 Peters, C. C. 198 ; *Pleasants v. Clem-
ents*, 2 Leigh, 474 ; *Burchet v. Faulkner*, 1 Dana, 99 ; 4 Phil.
Ev. (C. and H. Notes), 9, note 12.   (2.) The evidence offered
to prove fraud in the execution of the deed, was excluded by
the court, on the ground that the issue had already been adjudi-
cated in the chancery suit; and therein, it is insisted, the court
erred.   Fraud in the execution of a deed—as where it is pro-
cured by duress, or by false and fraudulent practices—renders
it void at law, as well as in equity.—*Swift v. Fitzhugh*, 9 Por-
ter, 63 ; *Mordecai v. Tankersly*, 1 Ala. 102 ; *Morris v. Harvey*,
4 Ala. 305 ; *Thompson v. Drake*, 32 Ala. 103 ; *Kennedy v.
Kennedy*, 2 Ala. 592 ; *Jackson v. Hill*, 8 Cowen, 290 ; *Jack-
son v. King*, 4 Cowen, 207 ; *Bright v. Eynon*, 1 Burr. 396.
The proposed evidence made out a clear case of fraud in the
execution of the instrument, within the cognizance of a court
of law ; while the issue in the chancery suit was undue influ-
ence, an issue which could not be decided in a court of law.
In fact, the validity of the execution of the mortgage has never
been considered in any court; and it is the defendant's un-
doubted right to have it passed on by a jury.   (3.) As to the
necessity of notice to quit, before the mortgagee can maintain
ejectment, the following authorities are relied on : Wade on

[Strang v. Moog.]

Notice, §§ 589, 599; *Jackson v. Hopkins*, 18 John. 487; *Carr v. Green*, 4 John. 186; *Jackson v. Laughead*, 2 John. 74.

Greg. L. Smith, with whom was J. L. Smith, *contra.*—(1.) One of the grounds on which the mortgage was attacked in the chancery suit was the illegality of its consideration—that it was founded on an agreement to suppress a criminal prosecution; and that is one of the grounds on which the validity of the mortgage is here assailed. As to this issue, the decree in the chancery suit is conclusive.—*Trustees v. Keller*, 1 Ala. 406; *Mervine v. Parker*, 18 Ala. 241; *Hopkins v. Shelton*, 37 Ala. 306; *Gilbreath v. Jones*, 66 Ala. 129; *Strauss v. Meertief*, 64 Ala. 299; *Hutchinson v. Dearing*, 20 Ala. 798; *McDonald v. Life Insurance Co.*, 65 Ala. 358; *Cargile v. Ragan*, 65 Ala. 287; *Bobe v. Stickney*, 36 Ala. 483. The principle of *res adjudicata* applies to every issue of fact necessarily involved, or actually litigated and determined.— *Chamberlain v. Gaillard*, 26 Ala. 504; *Strauss v. Meertief*, 64 Ala. 299; *Gilbreath v. Jones*, 66 Ala. 129. The former case between these parties, as shown by the transcript offered in evidence, and also by the printed report of the case, was not decided on the ground that there was no equity in the bill, but on the ground that the proof did not sustain the allegations—that, on each of the issues of fact presented by the pleadings, the complainant had failed to make out her case; and therein lies the difference between this case and those cited for appellant. (2.) The testimony proposed to be elicited from the witness Winston, as stated in the bill of exceptions, has no relevancy to the question of fraud in the execution of the mortgage; and its relevancy not being shown, the court did not err in rejecting it.—*Stewart v. The State*, 63 Ala. 109; *Bynum v. So. Pump Co.*, 63 Ala. 465. If its relevancy to the question of fraud had been shown, the evidence would have been inadmissible, because the decree in the former suit was conclusive as to that issue.—Authorities above cited. (3.) Notice to quit is not necessary, to enable the mortgagee to maintain ejectment.—1 Jones on Mortgages, § 719; *Keech v. Hall*, Doug. 21; *Lyman v. Mower*, 6 Vermont, 345; *Wilson v. Hooper*, 13 Vermont, 653; 26 Illinios, 9.

SOMERVILLE, J.—The rule is everywhere settled, that where a decree is rendered by a court of equity, dismissing a bill for *want of jurisdiction*, or because the complainant has a plain and adequate *remedy at law*, or because of any mere defect in the pleadings, or, we may say generally, on any other ground not involving *the merits* of the cause, such dismissal is usually stated to be "without prejudice," and is not held to be a final and conclusive adjudication of the matters in litigation,

Vol. LXXII.

so as to come within the doctrine of *res adjudicata.*—Freeman on Judg. § 270 ; *McCall v. Jones,*at present term, *ante, p.* 368.

And the rule is equally as well established, that, where a decree has been rendered, dismissing a bill on *the merits* of a case, it is "final and conclusive, not only as to all facts or issues actually decided, but upon all points which were necessarily involved in the matter adjudicated."—*McDonald v. Mobile Life Ins. Co.,* 65 Ala. 358 ; 1 Greenl. Ev. § 528 ; Wells' Res Adjudicata, § 217.

There can be, and is no difference, in the proper application of this principle, between a judgment at law and a decree in chancery. The theory upon which the doctrine of *res adjudicata* rests is, that public policy, as well as natural justice, favors the putting of an end to litigation. It is a wrong to the State, as well as to the litigant, that one should be twice harassed for the same cause of action. Hence the rule obtains, that where an issue has been settled by an adjudication *on the merits,* in a court of equity, the same issue, whether of law or fact, can not be again re-litigated in a court of law ; and *e converso,* where it has been tried at law, it can not be tried again in a court of equity ; provided the court, in each case, have jurisdiction of the subject-matter and of the parties litigant.—Freeman on Judg. § 248 ; *Wilkins v. Judge,* 14 Ala. 135.

It was accordingly decided, in *Smith v. Kernochen,* 7 How. (U. S.) 198 (s. c., 17 Curtis, 90), that, if the validity of a mortgage be tried and adjudicated in a suit in chancery, the decree binds parties and privies in an action of ejectment founded on the same mortgage. And in *Wilkins v. Judge,* 14 Ala. 135, *supra,* this court held that, where the question of fraud *vel non,* in a contract for the sale of slaves, was decided adversely to the vendor in a court of *law,* having competent jurisdiction, the same issue could not be re-litigated by him in a court of *equity.*

Under the modern rules of chancery practice, it is not left in doubt as to what constitutes a dismissal on the merits. Our 31st Rule of Chancery Practice (Code, 1876, p. 166), which adopts the prevailing English rule, reads as follows: "If the complainant, after the cause is set down to be heard, cause the bill to be dismissed, on his own application, or if the cause is called on to be heard in court, and complainant makes default, and by reason thereof the bill is dismissed ; then, and in such case, such dismissal, unless the court otherwise orders, *is equivalent to a dismissal on the merits,* and may be pleaded in bar to another suit for the same matter." This rule, it will be noticed, is embodied in substantially the same language as that used in Daniell's Chancery Pleading and Practice.—1 Dan. Ch. Pl. & Prac. (5th ed.) p. 659.

The present action is one of ejectment by a mortgagee against

30

the mortgagor. The only evidence of title relied on by the plaintiff in ejectment is the mortgage itself, which shows that the mortgagor has made default.

The defendant seeks to defend by assailing the validity of the mortgage on two grounds : (1.) That the consideration of the mortgage was an agreement to suppress a criminal prosecution against one Hubbard, for whose debt the mortgage was given as security. (2.) That its execution was obtained by duress *per minas*, practiced by the mortgagee and others upon the mortgage debtor, and through him on the mortgagor.

The mortgage had been previously assailed, by a bill in equity, filed by the mortgagor, identically upon the *first* of the above grounds. There was no question about the equity of this bill, or the jurisdiction of the court. The cause was tried on its merits, and was dismissed, only because of the fact that the proof failed to sustain the allegations of the bill. The bill was not dismissed for *want of equity*, as erroneously assumed by appellant's counsel; and in this particular the cases cited by him present a total lack of analogy to the one here under consideration.

Under the principles which we have above discussed, it is clear that the decree of dismissal was admissible in the ejectment suit, as evidence of, the fact that the first issue, as to the illegal consideration of the mortgage, had been already determined. There was no error in the court's ruling, that it was final and conclusive as to this particular issue, being *res adjudicata*.

There was no error in excluding the evidence as to Hubbard's alleged resignation, as cashier of the bank. It is not shown that there was any manifest connection between the principal issue in controversy and this collateral fact introduced to sustain it. The defendant proposed to prove, that she had been induced to execute the mortgage by reason of duress exerted through threats of prosecuting Hubbard criminally on the part of Moog, the mortgagee, and the bank officers. It is not shown, or intimated, that there was any connection whatever between these threats and Hubbard's resignation, or that he was induced to resign because of the threatened prosecution. The proposed evidence was clearly irrelevant.—*Brewer v. Watson*, 65 Ala. 88, 90; 1 Greenl. Ev. § 52; 1 Best Ev. §§ 90, 251–2.

The action being one of ejectment by a mortgagee against a mortgagor, after the law-day of the mortgage, it could be maintained without previous demand by the plaintiff, or notice to quit being first given to the defendant. This is the English rule, and seems to be the prevailing doctrine in this country, outside of the State of New York.—1 Jones' Mortg. § 719 ; *Allen v. Ranson*, 44 Mo. 263 ; *Carroll v. Ballance*, 26 Ill. 9 ;

[Irwin v. Bailey.]

*Doe v. Giles,* 5 Bing. 88; *Doe v. Olley,* 12 Ad. & Ell. 481;
*Pierce v. Brown,* 24 Vt. 165; 3 Wait's Act. & Def. p. 51;
Tyler on Eject. 50–51.

We discover no error in the record, and the judgment of the
Circuit Court is affirmed.