## THE FIRST NATIONAL BANK OF ST. PAUL v. H. A. BLOCKER.[1]

November 25, 1921.

No. 22,432.

**Rescission of contract for fraud — failure to give notice of rescission.**

1. An action in equity to rescind a contract for the alleged fraud of defendant may be maintained without the prior service of notice of an election to rescind.

**Action is sufficient notice — tender may be made in complaint.**

2. The commencement of the action is sufficient notice of such elec-

[1]Reported in 185 N. W. 292.

150 M.—22.

tion, and the required tender or offer to return what plaintiff received in the transaction may be made in the complaint.

**Directed verdict warranted by evidence.**

3. The complaint states a cause of action for such a rescission and the evidence received on the trial justified a directed verdict for plaintiff upon the issue of fraud.

**New trial.**

4. The record presents no error to justify a new trial.

Action in the district court for Ramsey county to recover $75,142.59. The case was tried before Dickson, J., who at the close of the testimony denied defendant's motion for a directed verdict and granted plaintiff's motion for a directed verdict for $82,133.68. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Theo. B. Torkelson* and *Morphy, Bradford & Cummins,* for appellant. *O'Brien, Stone, Horn & Stringer,* for respondent.

BROWN, C. J.

Action to rescind a contract on the ground of fraud, and to recover what plaintiff parted with in the transaction. Issue was joined by the answer of defendant Blocker; defendant Holm made no appearance. At the conclusion of the trial a verdict was directed in favor of plaintiff for the relief demanded by the complaint, and defendant Blocker appealed from an order denying his alternative motion for judgment or a new trial.

The assignments of error present three principal questions, namely: (1) Whether on the facts disclosed by the pleadings and evidence an action in equity for a rescission of the contract may be maintained; (2) whether the trial court erred in directing a verdict for plaintiff, the contention being that the issues should have been submitted to the jury, and (3) whether there was error in the rulings on the admission or exclusion of evidence.

As we read the record, there is little or no dispute as to the substantial or material facts in the case. Plaintiff is a banking corporation

doing business as such in the city of St. Paul. It had correspondents and business connections with various banks in other points of Minnesota and also North Dakota, among them being the State Bank of Bowman, North Dakota, of which defendant Blocker was president and general manager, a position he had held for a number of years. Defendant Holm was a farmer and rancher residing near Bowman, and was well known to Blocker. Some time early in the spring of 1919, Holm approached Blocker with a proposition of buying a herd of Texas cattle, to be taken to North Dakota and there fattened on the range and thereafter sold on the market. Subsequent negotiations between them resulted in an agreement to jointly enter into the venture as partners. Holm was without means and Blocker agreed to finance the transaction. The amount of money needed was quite large, estimated at the time at $45,000, and was more than Blocker's bank could supply. To meet the situation and procure the money, Blocker applied to plaintiff and solicited a loan to Holm of the amount stated. The request was in the form of a letter written by Blocker to the vice-president of plaintiff bank, and represented that a friend of Blocker was soon to be in need of $45,000 to make a payment on the purchase of 500 three-year-old steers, the loan to run about three months, "at which time he will turn these steers and pay up the note." The letter further stated:

"This is certainly a good loan, and it is good stuff and a good man back of it, but of course it is an excessive loan and we cannot take it here in the bank, so I was thinking I would run it to myself and if agreeable let you people carry it.

"I shall be pleased to hear from you at once in regard to this, for if you are not interested I shall be obliged to look elsewhere. I can absolutely assure you, Mr. Skinner, that there will be no additional time asked on this loan and that six months will be the absolute limit for this to run, and I certainly hope you will see fit to grant me this accommodation."

Plaintiff had other prior dealings with Blocker and he had the full confidence of Mr. Skinner who was in charge of this matter for the bank. And upon the faith and in reliance upon Blocker's representations that the loan was a good one, with a good man behind it, the loan was made

and plaintiff agreed to advance the amount stated. The bank officers did not know that Blocker was a partner of Holm and interested personally in the transaction; that fact was concealed by Blocker. Holm, who was represented as a good man, and his note for $45,000 as "good stuff" was insolvent and unable to pay his debts. He did not own the steers at the time, but expected to purchase them with the funds obtained from plaintiff. This fact was not disclosed to plaintiff by Blocker. On May 15, 1919, in a letter transmitting to plaintiff the Holm note and requesting an increase of the loan to $50,000 Blocker again asserted:

"This is an A No. 1 note in every respect, and I can assure you absolutely it will be paid at maturity. In fact, if present prices prevail, I believe it will be paid some time in September."

Plaintiff then closed the deal and transmitted the necessary credit upon which the full amount of $50,000 was paid over to Holm through the Bowman bank.

On the date of the letter last above quoted Holm had not yet acquired the steers nor any of them, a fact known to Blocker, but not by him communicated to plaintiff. Holm had, prior to the date of the letter, made a trip to Texas and entered into negotiations to purchase some cattle, but none thereof had been selected or set apart to him by the owner. Nevertheless, as security for the payment of the note, Blocker transmitted, with the letter just referred to, a chattel mortgage executed by Holm to Blocker on May 7, 1919, upon 600 head of cattle, recited in the mortgage as being the property of Holm and then in Custer county, Montana. Holm at the time owned no cattle in Montana of the description contained in the mortgage; he did have an option on a herd of like cattle in Texas, but did not own them and could not make a valid mortgage thereon to Blocker. The situation was kept from plaintiff, and when the mortgage was received by Mr. Skinner he was justified in concluding that it covered cattle in fact owned by Holm. Thereafter Holm made a second trip to Texas and then selected a herd of 630 cattle, steers and cows, and subsequently brought them to the range in North Dakota. Witnesses described the cattle in their testimony as poor and drouth stricken, and of value not exceeding $50 per

head, a total of something over $30,000. They did not thrive on the ranges of North Dakota, and were not in shape for sale on the market at any time during the fall of 1919, as contemplated and as Blocker represented they would be, very few of the entire herd being fit for the stock market. For this reason it became necessary to winter the entire herd in North Dakota. That involved considerable expense which Holm could not furnish, and Blocker was either unable or unwilling to supply the necessary funds. In this situation Blocker again applied to plaintiff for financial help. In a letter of September 27, 1919, he wrote plaintiff to the effect that Holm had some 850 or 900 head of cattle and between 25 and 50 head of horses, with 1,000 tons of hay for winter feed; that the prices of cattle were not the best and that Holm thought conditions would be better in November and December; that Holm expected to keep the herd in marketable shape at all times and when prices were right to sell 100 to 200 head at times until the indebtedness to plaintiff was paid up. He therefore requested a further loan to Holm of $25,000 to tide matters over until the market improved. In response plaintiff wrote Blocker that, as they understood the matter, there were in the herd some 700 two to four year steers in prime condition and ready for market, and that Holm intended to dispose of them when the market became attractive. To this Blocker replied:

"Your assumption that the   *   *   *   steers are ready for the market is correct, and whenever the market looks satisfactory to Mr. Holm he intends to ship; but he is so busy making hay now that he has no time to think about making a shipment."

In reliance upon the situation thus presented, the bank agreed to advance the additional funds. The representations of Blocker to induce the bank to that end, like those which brought about the first loan, were false and untrue. When the new loan was so applied for, the cattle were not in prime condition as represented, and that fact was known to Blocker, and it was also known to him, by reason of the failure of the cattle to fatten on the range during the summer and fall, it was necessary to carry them through the winter at a considerable expense. There was at the time no intention on the part of Holm or Blocker of shipping any of the cattle to the market for sale, either in 100 or 200

lots or otherwise, for, with the exception of a few head, all were unfit for the market. Again did Blocker conceal his relationship to Holm; he also concealed and failed to make known to the bank that the real motive on his part in procuring the second loan was an understanding with Holm that, if he procured it, the partnership would be dissolved, leaving Holm with the stock and 'the indebtedness to plaintiff to take care of, and bring out the best results possible." Just prior to this Blocker had disposed of his interests in the Bowman bank, and after the severance of his connection with the cattle deal he set about finding a location for a new bank, and was in California at the time of the discovery of the fraud which brought on this action.

On December 1, 1919, plaintiff was advised of the poor condition of the cattle, and of the falsity of the representations, on the faith of which the money had been loaned to Holm, and after due investigation into the matter promptly brought this action to rescind the contract, under which the money was so loaned, and recover the amount so parted with.

1. It is contended that the issues presented by the pleadings should have been submitted to the jury and that the trial court erred in directing a verdict. The contention is not sustained. The facts stated affirmatively appear from the evidence and are without substantial or material dispute. That by the false and untrue representations of Blocker plaintiff was deceived to its damage, finds ample support in the evidence. Prior dealings between them justified plaintiff in reposing special confidence in what he represented as facts and conditions surrounding the transaction, and that plaintiff was induced thereby to loan the money to Holm cannot well be questioned. On the surface Blocker appeared to plaintiff as wholly disinterested, when in fact he was soliciting both loans in his own interest as well as in the interest of Holm. He pictured to plaintiff a desirable investment, though the fact was that it was wholly speculative and of doubtful merit. That plaintiff had the right to rely upon his affirmative representations is clear, and that the falsity thereof renders him liable is affirmed by the recent case of Batchelder v. Stephenson, supra, page 215, 184 N. W. 852; opinion by Mr. Justice Dibell. The case at bar is stronger for recovery, for

here Blocker, who made the false representations, was an undisclosed party and personally interested in procuring the loan from plaintiff.

Manifestly plaintiff's remedy against him was not limited to an action for damages for the fraud; the relief here sought may be had in such case at the election of the defrauded party. I. L. Corse & Co. v. Minn. Grain Co. 94 Minn. 331, 102 N. W. 728. The fact that Blocker may have had no evil motive and did not intend to deceive or defraud plaintiff, is of no controlling importance. It is sufficient in this form of action that the representations were untrue in fact, and that the falsity thereof resulted in injury to plaintiff; fraud as a matter of law follows a showing of such facts from which relief may be had. Schlechter v. Felton, 134 Minn. 143, 158 N. W. 813, L.R.A. 1917A, 556; Helvetia Copper Co. v. Hart-Parr Co. 137 Minn. 321, 163 N. W. 665; Jacobson v. Chicago, M. & St. P. Ry. Co. 132 Minn. 181, 156 N. W. 251, L.R.A. 1916D, 144, Ann. Cas. 1918A, 355; Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710.

Nor was it necessary to the maintenance of the action, one in equity to rescind the transaction, that prior notice of rescission be served upon defendant, coupled with an offer to return the securities received in the transaction. That an action of the kind stated may be maintained and that an offer to return may be made in the complaint or on the trial is supported by all our decisions. Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; 3 Notes on Minn. Reports 660, and citations. The rule is somewhat different where the defrauded party attempts to rescind by his own act. I. L. Corse & Co. v. Minn. Grain Co. 94 Minn. 331, 102 N. W. 728.

That the action was promptly commenced on the discovery of the fraud cannot be questioned on the record. No time was lost in invoking the aid of the court and by the suit advising defendants of its claim to a rescission. The Bowman Bank was not involved in the transaction. The money passed through that institution, but with no secret or other interest in the matter. Blocker made no attempt to act for it, and his own appearance in the deal was as an individual and copartner of Holm and not as an officer of the Bowman Bank.

2. What has been said covers the case and the main contentions made

by defendant in support of the appeal, and results in the conclusion on the merits of the controversy, that the action is one in equity for a rescission of the contract, not one for damages for the fraud nor for money had and received; the complaint states a cause of action and the evidence indisputably shows the fraud relied upon for recovery, therefore a verdict was properly directed for plaintiff. And, in taking leave of the case, we add that all assignments challenging the rulings of the court in the admission and exclusion of evidence have been given careful attention, with the result that no error is shown. There was no abuse of discretion in denying defendant's request to amend the answer.

From all this the final conclusion is that the order appealed from must be and it is in all things affirmed.