49 So.2d 302

**SIMS v. CITY OF BIRMINGHAM.**

**6 Div. 771.**

Supreme Court of Alabama.

Oct. 19, 1950.

Rehearing Denied Dec. 14, 1950.

Henry Upson Sims, of Birmingham, for appellant.

Graham, Bibb, Wingo & Foster, of Birmingham, for appellee.

PER CURIAM.

This suit involves a strip of land between Blocks 444 and 473, according to the present plan of the City of Birmingham, which strip fronts eighty feet on the south side of Sixth Avenue, South, and which runs back southward between said blocks 255 feet. The appellant, Henry Graham Sims, who was the complainant below, claims ownership of said strip and the improvements thereon by devise from his grandmother, Mrs. Ella M. Graham, deceased. The appellee, the City of Birmingham, the respondent below, claims that said strip of land has been dedicated as a public street.

Benjamin P. Worthington lived for many years with his wife and children on his plantation, consisting of approximately 800 acres of land situate about two miles west of Elyton in Jefferson County, Alabama.

On December 8, 1870, Mr. Worthington and wife conveyed all of this land to Josiah Morris, as trustee for Elyton Land Company, other than a small of tract of approximately two acres, upon which stood the family dwelling and appurtenant outbuildings. The conveyance of December 8, 1870, contained the following provisions in regard to the dwelling and curtilage thereof: "* * * except two acres of the SW ¼ of NE ¼ of Section 31, upon which is located the dwelling house in which the said parties of the first part do now reside and the improvements thereon; which two acres of land is hereby reserved by said parties of the first part, subject to the following conditions and terms—that if the said party of the second part, or the company or association of persons, which it is proposed to organize and incorporate under the corporate name and style of the 'Elyton Land Company,' shall at any time within two years from this date, desire to purchase the said two acres of land, the said party of the second part or said land company by its corporate name shall have the right to purchase the same, and the said parties of the first part shall be bound to sell and convey to the said purchasers the said two acres of land and all the improvements thereon upon being paid by said party of the second part or said land company $25 in cash for each of the said two acres, and also paying in cash the assessed value of all improvements thereon at the time of said purchase, said value to be ascertained by referees under the laws of Alabama, two of whom shall be chosen by said parties of the first part and two by said party of the second part or said land company, they having the right in case of disagreement to choose an umpire and their assessment of value of said improvements is to be final."

It seems to be admitted that after securing the deed of December 8, 1870, but before exercising the option therein contained as to the dwelling, the Elyton Land Company had a map made of the property which had been purchased from Mr. Worthington, as well as the small tract upon which the dwelling and the outbuildings were situated and which, as before indicated, was not included in the said 1870 deed. The map showed the property as divided into streets, lots and blocks. This map or one made shortly thereafter showed the dwelling and outbuildings of Mr. Worthington to be situated in Thirty–first Street as shown on the map, but it was indicated on the map that Thirty–first Street was not open to the public at that point, that is, between Sixth Avenue,

South, and Seventh Avenue, South, as those avenues appeared on said map.

Thereafter, on July 22, 1872, before the expiration of the option contained in the conveyance of December 8, 1870, Mr. Worthington and wife executed the following conveyance to Elyton Land Company:

"This Indenture made and entered into this the 22nd day of July, 1872, between B. P. Worthington and wife Caroline Worthington of the County of Jefferson and State of Alabama, of the first part and the Elyton Land Company a body corporate under the general laws of said State with the power of building, purchasing and selling real estate WITNESSETH that Whereas, the said B. P. Worthington and his wife, Caroline Worthington have heretofore to-wit: on the 8th day of December, 1870, sold and conveyed to Josiah Morris and by supplemental and amendatory deed dated 17th of July, 1871, sold and conveyed to the said Elyton Land Company, a corporation as aforesaid certain tracts or parcels of land situated in the County and State aforesaid subject to a reservation on the part of the said B. P. Worthington and his wife Caroline Worthington of two acres of said land, and the improvements thereon situated in the Southwest Quarter of the North East Quarter of Section 31, Tp. 17, R. 2. West, and Whereas by the stipulations of the deed first aforesaid it was agreed that the said Josiah Morris or his assigns should have the right to purchase from the said B. P. Worthington and wife, Caroline Worthington the said two acres and improvements thereon at any time within two years from said date, and whereas, the said Elyton Land Company holding under the said Josiah Morris do now desire to purchase said two acres of land.

"NOW, THEREFORE, the said B. P. Worthington and his said wife Caroline for and in consideration of the sum of one dollar in hand paid and the further consideration expressed in deed of conveyance from said Elyton Land Company to the said B. P. Worthington of even date with this instrument, have bargained and sold and by these presents do bargain, sell and convey to the said Elyton Land Company the two acres aforesaid situated in the S.W. ¼ of the N.E. ¼, Tp. 17, R. 2. West & reserved as aforesaid by the said B. P. Worthington and said wife, Caroline Worthington in the deed first aforesaid subject however to the following stipulations and agreements, to-wit:—

"The said B. P. Worthington shall have the right to use and occupy the dwelling and outhouses now occupied by him situated, in 31st Street in the plan of the property of the Elyton Land Company between 6th and 7th Avenues South until such time as the said Elyton Land Company may desire to open for public use said 31st Street between 6th and 7th Avenues South and the said Elyton Land Company shall have the right to open said street last aforesaid at any time they may think proper on payment to the said B. P. Worthington in cash the assessed value of said dwelling and outhouses which may be situated in said street at the date of the assessment which assessment must be made if the parties hereto cannot agree upon the value, by referees under the arbitration laws of the State of Alabama, two of whom shall be chosen by the said Elyton Land Company and two by the said B. P. Worthington, they having the right in case of a disagreement to choose an umpire and their assessment of the value to be final."

Hereafter, when we refer to Thirty-first Street we have reference to that strip of land eighty feet in width which lies between Sixth Avenue, South, on the north, and Seventh Avenue, South, on the south, and shown on the maps, plans, and plats as Thirty-first Street.

Mr. Worthington continued to occupy the family dwelling until his death in November, 1884, no effort having been made during his lifetime to open Thirty-first Street in accordance with the condtions expressed in the deed of July 22, 1872.

In distributing his property, Mr. Worthington, in May, 1884, executed a conveyance to his wife, Caroline Worthington, wherein he conveyed among other property that described as follows: "Also all that part of 31st Street on which my home-

stead is situated being all that part of said street lying between Avenues 'F' and 'G' and Block 444 and 473." It is well to note at this point that Avenue F is the same as Sixth Avenue, South, and Avenue G the same as Seventh Avenue, South.

Thereafter, in May, 1889, approximately three months before her death, Mrs. Caroline Worthington, the widow of Benjamin P. Worthington, executed a deed wherein she conveyed to her three daughters, Mrs. Virginia Elizabeth Nabers, Mrs. Mary C. Robertson, and Mrs. Ella M. Graham, a portion of the strip of land theretofore conveyed to her by her husband in May, 1884. The description in the deed from Mrs. Worthington to her said three daughters was as follows: "A strip of land eighty (80) feet by four hundred (400) feet being a rectangle and constituting what would be all that part of the thirty-first (31) street between Avenues F & G, if said thirty-first street was extended between Avenues F, & G, being bounded on the North by Avenue F, on the east by block Number four hundred and seventy three (473), on the South by Avenue G and on the west by block number four hundred and forty-four (444), together with all the improvements thereon, except one hundred and forty five (145) feet off of the south end of said strip, which one hundred forty-five (145) feet by eighty (80) feet extending from the rear of the old Worthington house to Avenue G which shall be kept open and used in common by the owners of all of the adjoining lots, situated in Birmingham, Jefferson County, Ala."

In April, 1905, Mrs. Nabers and Mrs. Robertson conveyed their interest in the said strip, which they had acquired by deed from their mother, to their sister, Mrs. Ella M. Graham.

Mrs. Worthington and her three daughters were in open possession of said strip, claiming to own it ever since Mr. Worthington's deed to Mrs. Worthington, as against Elyton Land Company and its assigns, if any. Mrs. Graham continued in possession of the strip of land and was in possession when in 1916 the City of Birmingham filed it bill in equity against her in the city court of Birmingham, seeking to have her remove the buildings and fences on the said strip of land, on the ground that they constituted a nuisance. The suit was transferred to the circuit court of the Tenth Judicial Circuit, in equity. The sufficiency of the bill was not challenged by demurrer, but the respondent, Mrs. Ella M. Graham, answered the bill. After testimony was taken and on final hearing, the bill was dismissed. The City of Birmingham appealed to this court and on or about June 27, 1918, we affirmed the decree of the lower court dismissing the bill. See City of Birmingham v. Graham, 202 Ala. 202, 79 So. 574.

After that case was concluded, Mrs. Ella M. Graham remained in possession of said strip until her death in 1947, claiming to own it. During her lifetime the City of Birmingham made no further effort to interfere with her possession. The strip was assessed to Mrs. Graham for state, county and city taxes from 1941 to 1947. The taxes so assessed were paid by Mrs. Graham during her lifetime and after her death by her executor.

Mrs. Graham died testate, leaving all of her property to her grandson, Henry Graham Sims, the only son of her daughter, Alice Graham Sims.

The instant proceeding was instituted by Henry Graham Sims against the City of Birmingham in August, 1947. As last amended, the bill sought (1) to quiet title to the strip of land; (2) to cancel the deed executed by B. P. Worthington and wife on July 22, 1872, to the Elyton Land Company; (3) to enforce a vendor's or purchase money lien for the value of the buildings on the said strip of land.

The respondent, the City of Birmingham interposed a demurrer to the bill as a whole and to the several aspects thereof. The trial court sustained the demurrer as to the aspects of the bill seeking to have the 1872 deed cancelled and to enforce a vendor's or purchase money lien. The demurrer to the bill as a whole and to that aspect of the bill seeking to quiet title was overruled.

Thereafter the respondent filed its answer which, among other things, averred

that the judgment in the case of City of Birmingham v. Graham, 202 Ala. 202, 79 So. 574, was res judicata as to all questions sought to be determined in the instant proceeding.

After testimony was taken and on final hearing, the trial court entered a decree denying to complainant the relief prayed for in his bill of complaint and the bill was dismissed. From that decree the complainant below, Henry Graham Sims, has appealed to this court.

In the suit filed by the City of Birmingham against Mrs. Ella M. Graham in 1916, the City took the position that it was entitled to have Mrs. Graham remove the buildings and fences situate in the strip of land because of the fact that said strip of land had been dedicated to the public use as a street and that it was unnecessary for the City to reimburse Mrs. Graham for the buildings, fences, etc., in view of the fact that the right to maintain the dwelling, outbuildings, and fences on said strip was personal to Mr. B. P. Worthington and that all rights to maintain such buildings and fences were ended upon the death of Mr. Worthington.

Mrs. Graham in her answer denied that the strip of land had ever been dedicated as a street by her father, Mr. B. P. Worthington, or by the Elyton Land Company. In her said answer Mrs. Graham averred that the Elyton Land Company never exercised the privilege to open the street nor did that corporation, before its dissolution, assign that right to the defendant, the City of Birmingham. That the respondent, Mrs. Ella M. Graham, took the position that the City of Birmingham had no rights under the deed from B. P. Worthington to the Elyton Land Company, executed on July 22, 1872, is shown by the following averments of her answer: "12th. And this Defendant further answering says that the Plaintiff should not be granted any relief by the Bill of Complaint (except in so far as the Bill may seek to enforce the City's right of eminent domain to acquire the land described in the Bill as private property for a public purpose), because the said Elyton Land Company never was the owner of all the title to the realty lying in what is referred to as 31st street between 6th and 7th Avenues, South, according to the plan referred to in the deed from the said B. P. Worthington to said Company dated July 22, 1872, copy of which is attached to this answer; nor did it ever acquire the right to possession thereof and therefore it never was able to dedicate the same to the use of the public as a street and that the said B. P. Worthington was in possession of the said strip as his own at the time of said deed and had been in possession openly claiming to own the same for more than ten years prior thereto and by said deed of July 22, 1872, copy of which is hereto attached, he reserved the right to possession of that part of said two acres comprised in said strip described as 31st Street between 6th and 7th Avenues, South, until it should be purchased by said Elyton Land Company according to the terms of the option set out in said deed; and the said Elyton Land Company never exercised said option prior to the dissolution of said corporation under the laws of Alabama more than ten years before the filing of this Bill. And this defendant and those thru whom she claims since the conveyance from her said father to her said Mother as hereinafter set forth has been in open notorious possession of said strip, claiming to own the same adversely against the whole world for more than ten years prior to this date under the aforesaid deeds from her said mother and sisters."

As before indicated, the trial court in the case of City of Birmingham v. Graham, supra, dismissed complainant's bill, from which decree the City of Birmingham prosecuted an appeal to this court. The judgment entry of this court merely shows an affirmance of the decree of the trial court.

However, the opinion of the court fully discloses the issues and arguments presented on the appeal and we are clear to the conclusion, from a careful examination of the original record in the case of City of Birmingham v. Graham, supra, which by agreement is a part of this case, that the matters considered and discussed in that opinion were necessary to a deci-

sion in that case and were not collateral to the issues therein.

In substance, the issue before the court was as to the rights of the parties in the strip of land. Certainly one of the pivotal points in that case was the construction to be placed on the deed of July 22, 1872.

The pertinent parts of the opinion .of this court in the case of City of Birmingham v. Graham, supra, are as follows:

"The conditions in Mr. Worthington's deed to the Elyton Land Company, which were covenants running with the land, secured to Mr. Worthington, his heirs, or assigns, the right to use and occupy the dwelling and outhouses designated for the time indicated, and that the land embraced in Thirty-First street would be used for that public purpose when the street was opened, and secured to that land company or its assigns the right to open, as a public thoroughfare, Thirty-First street between Sixth (F) and Seventh (G) Avenues South, at any time the grantee or its assigns may think proper to open the same pursuant to the plan of said street and avenues theretofore platted by that company, on payment in cash the assessed values of the dwelling and outhouses situated therein. The covenants—if such there was —to erect other buildings on the property after the delivery of the deed from Mr. Worthington to Elyton Land Company, and, in pursuance of the occupancy of the dwelling and outhouses secured by his deed to Elyton Land Company for the time indicated, was personal to Mr. Worthington, and did not extend to his assigns. The value of such buildings as may have been erected by Mr. Worthington in the reasonable exercise of his right of occupancy, to the time he conveyed his interest in the lands to Mrs. Caroline Worthington, was secured to him and his assigns by the covenants in his conveyance to Elyton Land Company, and constituted a part of the purchase price for the lands that must be paid for per covenant conditions. Spencer v. Clark, supra [5 Coke, 16].

"Such conditional conveyance of the lands for public street was not contrary to the law of dedication, since a grantor may reasonably limit or deny certain uses of lands conveyed, and otherwise reasonably fix limitations for their use by covenants running with the land. Webb v. Robbins, supra [77 Ala. 176]; Gilmer v. Mobile & M. Ry. Co., supra [79 Ala. 569]. The use of the words, 'Thirty-First street, between Sixth and Seventh Avenues South,' in the conveyance in question, as to Mr. Worthington, his heirs and assigns, was descriptive of that part of the two acres of the homestead tract sold on conditions unequivocally stated, and was a reasonable limitation of the use to which it was to be subjected by Elyton Land Company or assigns. Under the Elyton Land Company's plat or map, showing Thirty-First street as open for the use of the public, its sale of lots with reference thereto, and its partial exercise of the option (of December 8, 1870) by the purchase on July 22, 1872, on conditions of the land from Worthington for use as a public street, as against Elyton Land Company and its assigns, constituted a dedication of all its right, title and interest therein to the public and to those who purchased respective lots with reference to that map, showing as open to the public said avenues and that street. This right was subject, however, to the payment of the balance of the purchase money necessary to secure from Worthington or assigns an unincumbered title thereto. The intention of the parties to this effect is disclosed not only by the instrument but by the situation of the parties and the surrounding circumstances, including that of the location of these lands with reference to others theretofore purchased. By such conditions the Elyton Land Company and its assigns, on the one hand, and B. P. Worthington and his heirs and assigns, on the other, were bound as to the consideration, the time and terms of payment, and the use to which the lands was to be subjected. The acceptance by subsequent purchasers of lots in the same subdivision, with reference to this street, or by the municipality, was on the conditions shown of record of securing to Worthington and his assigns the payment of the balance of the purchase money at the time indicated, and subject to the reasonable limitations of the ultimate use for

which the land was sold. 2 Warvelle on Vendors, § 680.

\* \* \* \* \* \*

"The several subsequent conveyances introduced in evidence by Mr. and Mrs. Worthington, by their heirs and assigns, and by other parties in interest, of adjacent lands, wherein reference is made to the plat or map made by the Elyton Land Company and others, of the subdivision embracing and recognizing Thirty-First street as open to the public, are not sufficient to operate an estoppel in pais against respondent's right to claim the stipulated compensation—the balance of the purchase money for the buildings situated thereon at the date of Mr. Worthington's deed of May 19, 1884, to Mrs. Caroline Worthington. The right of the owner of the vendor's lien was duly reserved against his grantee and its assigns, and against an unconditional acceptance of the lands by the public until the purchase price thereof was fully discharged, by the due record of the conditional conveyance and by the continued possession of the land under this conveyance by the Worthingtons and their assigns. The payment of taxes thereon and of municipal assessments apportioned thereto, by such grantee, were not acts inconsistent with the limited use and right appurtenant thereto, reserved by the grantor to himself and assigns. A different case is presented to that of City of Mobile v. Chapman, [202 Ala. 194], 79 So. 566. Respondent's possession and other general acts of ownership are consistent with, and will be referred to, the conditional conveyance by Mr. Worthington. And when the terms of the purchase and dedication are fully complied with, by payment in cash of the value of the buildings situated thereon at the date of Worthington's conveyance, Mrs. Graham's interest therein and right of occupancy will terminate.

"As to the three cottages erected by her on the land (in 1907), they are subject to removal, or, after the fulfillment, of the conditions of the original grant, may be subject to abatement as a nuisance in a proper suit.

"If the bill had been filed by an assign of the Elyton Land Company in the exercise of the right of assessment, and payment of the cash value of the obstructing buildings located thereon at date of said conveyance, for the purpose of opening Thirty-First street at the designated point, in compliance with the conditions of Worthington's grant to the Elyton Land Company, or filed by the city, or by an owner of property having the right, in the exercise of such covenant running with the land, a different case would be presented for decision. The purpose of the present bill by the municipality was to abate as a nuisance the dwelling and all outhouses situate thereon, without compliance with the terms of the conveyance, which was properly denied by the chancellor. [202 Ala. 202, 79 So. 577]

"The decree dismissing the bill is affirmed."

Broadly speaking, in the present suit the complainant seeks to have the court declare that he has fee simple title to the strip of land involved, free from any right of the City of Birmingham to open said strip as a public street, even though the City of Birmingham pays to him the value of the improvements located on the strip. He bases his right to such a decree on the averments that (1) there has been no dedication of the strip for public use as a street; (2) that any right to open the strip as a public street under the provisions of the deed of July 22, 1872, has long since expired in that the parties to that conveyance contemplated that such right should be exercised within a reasonable time and that the period of seventy-five years had elapsed at the time of the filing of this bill and that right has not been exercised; (3) that there was no consideration for the deed executed by B. P. Worthington to Elyton Land Company on July 22, 1872.

In the alternative, it seems that the complainant prayed that in the event he was not entitled to a decree cancelling the deed of July 22, 1872, as a cloud on his title, that the vendor's lien referred to in the opinion of this court in the case of City of Birmingham v. Graham, supra, be foreclosed.

■ The general rule of res judicata is that a judgment of a court of competent jurisdiction, rendered on its merits, is final and conclusive of the matter in controversy and what ought to have been litigated in the suit as between the parties to the litigation. Clark v. Whitfield, 213 Ala. 441, 105 So. 200, and cases cited.

■ There is, of course, no difference in the proper application of this principle between a judgment at law and a decree in chancery. Strang v. Moog, 72 Ala. 460. It is also well established that, where a decree has been rendered dismissing a bill on the merits in a case, it is final and conclusive, not only as to all facts or issues actually decided, but upon all points which were necessarily involved in the matter adjudicated. McDonald v. Mobile Life Ins. Co., 65 Ala. 358; Strang v. Moog, supra. It has been said in essence that the doctrine of res judicata is generally broader than the determination of the question directly involved in the prior action, and the prior judgment extends to all questions falling within the scope of the original action, and which could have been presented by exercising due diligence, and extends to both the claim and the defense. Crowson v. Cody, 215 Ala. 150, 110 So. 46; Fife v. Pioneer Lumber Co., 237 Ala. 92, 185 So. 759; Jefferson County v. McAdory, 32 Ala.App. 294, 25 So.2d 396.

■ It is also well settled that a judgment or decree is conclusive, not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them, defined by some of the authorities as "a mutual or successive relationship to the same rights of property." Bigelow v. Old Dominion Copper Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009; Interstate Electric Co. v. Fidelity & Deposit Co., 228 Ala. 210, 153 So. 427, 429.

It is true that in the case of City of Birmingham v. Graham, supra, Mrs. Graham did not take the position that there was no valid consideration for the execution of the deed of July 22, 1872, and that, therefore, neither the Elyton Land Company nor the City of Birmingham had any right thereunder. This question was within the scope of that proceeding and could have been presented by the exercise of due diligence. Assuming, but not deciding, that the question was not presented in that suit as to whether or not the City of Birmingham had succeeded to the rights of the Elyton Land Company under the deed of July 22, 1872, it is sufficient to say that the question was within the scope of the action brought by the City of Birmingham against Mrs. Graham. Without question, this court definitely held that there had been a dedication of the strip of land to the public use as a street. It also determined as to the rights of the City of Birmingham and Mrs. Graham in regard to the so-called vendor's lien.

■ The complainant in this case, Mr. Henry Graham Sims, is without question in privity with his grandmother, Mrs. Ella M. Graham, under whom he claims. It follows, therefore, that the effect of the determination of the suit by the City of Birmingham against Mrs. Graham was to create an estoppel against him to again litigate the same issues with the City of Birmingham or to litigate with the said City issues which Mrs. Graham ought to have litigated within the scope of that action.

In the discussion by the court, it is clearly stated that the conveyance of July 22, 1872, which passed to the Elyton Land Company a right to open the street referred to, to be exercised at any time they think proper, on payment in cash of the assessed value of the dwelling and outhouses, conveyed a *conditional* right, and was a conditional dedication. It also appears that the court understood by the transaction that Worthington and his successors, which would include this complainant as the successor to Mrs. Graham, had a vendor's lien to secure the payment of said value of the improvements as a part of the consideration for the deed. The opinion seemed to use the idea of a vendor's lien and that of a conditional dedication in the same connection. That status is not inconsistent because the deed may imply an obligation by the Elyton Land Company as grantee to make the payment, which may also be a condition to the enjoyment of the ease-

ment. In the former case, supra, 202 Ala. 202, 79 So. 574, 575, there was nothing in the decree or opinion or the record to show that the pleadings sought to have declared a vendor's lien. But it declared that the dedication was on the condition that the street was not to be opened, except upon the payment of cash of said value of the dwelling and outhouses; and that this could be done "at any time they may think proper." The effect of that decree was to declare that that status then existed June 27, 1918.

As we have said, the bill in the instant case sought (1) to quiet the title under the statute; (2) to cancel the deed of July 22, 1872, to the Elyton Land Company; and (3) in the alternative, to enforce or foreclose a vendor's lien for the value of the buildings. We think that means to seek to have the amount specified to be paid or, in default, that a foreclosure of the right to open the street be decreed. The bill also sought general relief. It is apparent that the pleader was accepting the view expressed on appeal in the former case that there was a vendor's lien and sought a strict foreclosure of it. The relief in quieting the title under § 1109, Title 7, Code, extends broadly to all matters affecting it. Standard Contractors Supply Co. v. Scotch, 247 Ala. 517, 25 So.2d 257; Watson v. Baker, 228 Ala. 652, 154 So. 788; Grayson v. Muckleroy, 220 Ala. 182, 124 So. 217.

We think the trial court in the instant case should have gone further than merely to determine that under the decree in the former case, the City as the owner of the easement so dedicated still has a right at any time it thinks proper to pay the amount specified in said deed and open the street. That is what was decided and held in that case. It meant that the right continued to exist but only on compliance with the condition named. Such a status was then (June 27, 1918) declared to be effective. Nothing was done to change that status until this bill was filed. The decree there did not hold that this right must be exercised in any certain time nor in a reasonable time. There was nothing in the deed in question which fixed a time limit or made time of the essence in complying with the condition. But we think the right should have been exercised in a reasonable time after June 27, 1918, by complying with the terms of the condition. But when time is not of the essence, a failure to comply either in the time specified, if it is specified, or if not so specified, in a reasonable time, does not ipso facto serve to foreclose the right, unless the contract so stipulates. To have that effect the party must be given notice to comply within a fixed reasonable time thereafter and, in default, that his right be foreclosed. Boozer v. Blake, 245 Ala. 389(6), 17 So.2d 152; Bay Minette Land Co. v. Stapleton, 224 Ala. 175(13), 139 So. 342; Dominey v. Johnson-Brown Co., 219 Ala. 666, 123 So. 52(2); McFadden v. Henderson, 128 Ala. 221, 29 So. 640. We think that illustrates the status of the parties at the present time. In this suit, a statutory bill to quiet title, the court upon request of complainant should ascertain the value of the improvements to be paid as a condition to opening the street, and make a decree allowing the City a fixed reasonable time in which to comply with the condition named and that, in default of such compliance, the right to open the street shall be forever foreclosed and barred.

The bill in terms sought a strict foreclosure of the *vendor's lien,* as there termed, but its effect was to foreclose the right to open the street upon a failure to comply with the condition of the easement. That is what a strict foreclosure implies. Rogers v. Gonzalez, 252 Ala. 313, 40 So.2d 858. The relief sought in that connection with a prayer for general relief should be properly interpreted as seeking such relief as he is entitled to. The demurrer to the bill in so far as it sought a foreclosure of such right should not have been sustained, nor relief denied by dismissing the bill. We think it should have overruled the demurrer in that respect and granted the relief to which we have referred.

The decree is therefore reversed both with respect to the demurrer to that aspect to which we have referred, and in so far as it denied relief and dismissed the bill.

The cause is remanded for further proceedings pursuant to this opinion.

Reversed and remanded.

BROWN, FOSTER, SIMPSON, and STAKELY, JJ., concur.

LIVINGSTON and LAWSON, JJ., dissent.

LAWSON, Justice, dissenting.

In my opinion, the case of City of Birmingham v. Graham, 202 Ala. 202, 79 So. 574, is decisive of all the questions presented on this appeal.

As I understand the opinion in that case, this court held that under the plain, clear language of the 1872 deed from Mr. Worthington and wife to the Elyton Land Company, the City of Birmingham, as a successor to the Elyton Land Company, has the right to open the strip of land as a part of Thirty-First street "at any time" it "may think proper to open the same pursuant to the plan of said street and avenues theretofore platted by that company, on payment in cash the assessed values of the dwelling and outhouses situated therein."

I construe the effect of the holding of the majority to be that the City may be forced to pay for the improvements, although it is not ready to open the strip of land as a public street, or lose its rights under the said 1872 deed. In my opinion, such holding is diametrically opposed to the holding in City of Birmingham v. Graham, supra, which, as before indicated, in my opinion is res adjudicata of all questions presented. Therefore, I am constrained to dissent.

LIVINGSTON, J., concurs in this view.

On Rehearing.

FOSTER, Justice.

▇▇ It is well settled, as pointed out above, that to rescind a land sale contract for the failure of the other party, the party complaining of such failure must call upon the other to perform and give him a reasonable time after notice in which to comply or be foreclosed. Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342; Elliott v. Howison, 146 Ala. 568(8), 40 So. 1018; J. M. Ackley & Co. v. Hunter-Benn & Co.'s Co., 166 Ala. 295, 51 So. 964; Stafford v. Colonial Mortgage & Bond Co., 221 Ala. 636, 130 So. 383.

It is contended that if this principle is here applicable, notice should be given prior to the institution of the suit and a failure on the part of the city to exercise its right to pay for the property has resulted.

▇▇ We cannot agree to such contention. There are many situations in which a notice or a demand is important in establishing a claim in equity or at law. The processes of the court are usually regarded as sufficient to such legal requirements. This principle is illustrated in many situations and particularly with respect to a vendor and vendee. It is not necessary in order to enforce specific performance of a contract by the purchaser to offer to comply with the contract before filing the bill, the bill offering to do equity. Mitchell v. Walker, 235 Ala. 458, 179 So. 633; Zirkle v. Ball, 171 Ala. 568, 54 So. 1000; Cudd v. Wood, 205 Ala. 682 (11), 89 So. 52; Ashurst v. Peck, 101 Ala. 499(5), 14 So. 541. When the vendee is in default, the vendor has a right to elect whether he will abandon the contract and re-enter upon the premises or hold the vendee to his agreement. But "in neither case has he the right to any notice of the election of the vendor other than what the process would give him when proceedings are commenced." Seabury v. Doe ex dem, Stewart, & Easton, 22 Ala. 207(3), 218; Mendota Coal & Coke Co. v. Eastern Railway & Lumber Co., 9 Cir., 53 F.2d 77; First National Bank v. Blocker, 150 Minn. 337, 185 N.W. 292; Angel v. Columbia Canal Co., 69 Wash. 550, 125 P. 766.

This suit was begun, as has been pointed out, by filing a statutory bill to quiet the title under section 1109, Title 7, Code. We observed above that in such a suit equity has broad powers extending to all matters affecting the title between the parties. Included in that statement of the principle would be the right of complainant to require the city to exercise its rights

under the deed of July 22, 1872, but within such reasonable time as may be allowed by the court upon the election of the complainant to require an exercise of that right, and the filing of this bill with a prayer for foreclosure of such right was sufficient to invoke the jurisdiction of the equity court to that end and enable the complainant, through the processes of the court, to require the city to determine whether or not it will exercise its rights so conferred within such reasonable time as may be allowed. It will be observed that this right was given to the city about seventy-eight years ago. The complainant and its predecessors did not see fit to require the city to make an election prior to the time of the former adjudication of their claims, as was determined on June 27, 1918. So that up to that time forty-six years had expired and the city had done nothing toward exercising such rights and the property owner had not taken steps to require it, the court held in that case that it still existed; and now, thirty-two years after said decision, the city is still claiming that right to be exercised whenever it sees fit at any time in the future, and without any duty on its part ever to act at any time in that regard.

While the terms of the provision give the city the right to act "at any time they may think proper," we do not think this was intended to be perpetual, and that the city can stand off for seventy-eight years, one hundred and seventy-eight years or one thousand and seventy-eight years, and still hold on to the right when the complainant is seeking to have a determination and foreclosure of that right. The power of the city to perform at any time they think proper, we do not think lasts forever. But under the authorities, which we have cited, it should not be foreclosed until notice has been given and a reasonable time thereafter to act. Such is a strict foreclosure. In the enforcement of such a remedy the court prescribes a time in which the performance is to be had, just as we think the court may here fix such a time.

It is insisted the deed of July 22, 1872 provides a condition precedent to the institution of any such suit by complainant in this case, in that, it provides that the value of the dwelling and outhouses shall be assessed if the parties cannot agree upon the value by referees under the arbitration laws of the State of Alabama. It will be observed there is nothing in said stipulation which makes an arbitration a condition precedent to the maintenance of a suit. A stipulation for arbitration of factual differences may or may not be a condition to recovery, and unless it is made a condition to recovery it is collateral to the contract and suit may be maintained without a compliance. Wright v. Evans, 53 Ala. 103. We quote from 53 Ala. at page 108: "A mere unexecuted agreement to submit is of no force, even when made by the party. It is not a bar to the suit, if made prior to its institution, or if made pending the suit, to its further maintenance." The same principle is declared in the authorities generally. 5 Corpus Juris 42, section 68, states it as follows: "An agreement to submit to arbitration, not consummated by an award, is no bar to a suit at law or in equity concerning the subject matter submitted." See, also, 6 C.J.S., Arbitration and Award, § 29. But in 13 Corpus Juris 680, it is said, "Where it is made by the contract *a condition precedent,* a provision for the submission of disputes to arbitration, * * * must be complied with before an action may be brought on the contract. The rule is otherwise, however, where the arbitration or approval is not made a condition precedent". It is likewise similarly stated in 29 Am. Jur. 928, and 17 Corpus Juris Secundum, Contracts, § 499, page 1033.

We have had several cases in this State in which the clause providing for a limited arbitration also stipulated that no suit should be .brought until such arbitration had been complied with. We held in those cases that it is a condition precedent to the maintenance of the suit, and that a suit in violation of it was subject to a plea in abatement. McCullough v. Mill Owners Mutual Fire Ins. Co., 243 Ala. 67, 8 So.2d 404; Headley v. Aetna Ins. Co., 202 Ala. 384, 80 So. 466; Ex parte

Birmingham Fire Ins. Co., 233 Ala. 370, 172 So. 99.

 There is nothing in the deed here in question which indicates an intention to make arbitration a condition precedent to a suit in equity, such as is here involved, as we have interpreted it. There is of course no right to an action at law by this complainant, but his only right with respect to the situation is in equity, and we thnk it is such as we have indicated.

In our opinion, *supra,* we observed that the court, upon the request of the complainant, should ascertain the value of the improvements to be paid as a condition to opening the street. We did not indicate in that opinion the manner in which the court should proceed to ascertain the value of the improvements. This of course may be done pursuant to the terms of the deed of July 22, 1872, if the parties cannot agree and thereby obtain the benefit of the arbitration clause in the same. It is then in the nature of a reference of the cause to that extent. Snodgrass v. Armbrester, 90 Ala. 493, 7 So. 840; section 829, Title 7, Code.

Application for rehearing overruled.

BROWN, SIMPSON and STAKELY, JJ., concur.

LIVINGSTON and LAWSON, JJ., dissent.