On April 2, 1943, Preston Tatum married Lillie Mae Byrd while he was in the Army. Eighteen months later, on October 20, 1944, Preston filed for divorce, alleging that Lillie Mae was guilty of adultery and was pregnant with a child not fathered by him. The complaint stated, in pertinent part:
 "Your orator, Preston E. Tatum, respectfully shows unto Your Honor the following statement of facts:
". . .
 "6. That the defendant, Lillie Mae Byrd Tatum, the wife of your orator, Preston E. Tatum, on to-wit: the 4th day of April, 1943, and in Autauga County, Alabama, where she was then living with your orator as his wife, without any cause whatever, voluntarily abandoned your orator, his bed and board, and since that time has continuously and voluntarily lived separate and apart from your orator, and has failed to return to live with him as his wife.
 "7. Your orator would further show unto Your Honor that at various times since the 4th day of April, 1943, the defendant, Lillie Mae Byrd Tatum, wife of your orator, Preston E. Tatum, has committed acts of adultery with divers persons whose names are to your orator unknown. That the defendant, Lillie Mae Byrd Tatum is at this time pregnant and expects to give birth to a child in the near future. That orator has never seen the said Lillie Mae Byrd Tatum since the date of their separation on April 4th, 1943, and that more than 18 months have elapsed since he has seen her or been with her. That he is not the father of the unborn child of the said Lillie Mae Byrd Tatum. That he has never condoned her said acts of adultery, and that he will never live with her again as husband and wife.
 "THE PREMISES CONSIDERED, your orator prays that Your Honor will take jurisdiction of this cause, and that the said Lillie Mae Byrd Tatum be made a party defendant hereto, and that she be required to plead, answer or demur to this bill of complaint within the time and manner required by law, and orator further prays that upon a final hearing of this cause, and the evidence to be submitted therewith that Your Honor will grant unto orator an absolute decree of *Page 1134 
divorce forever dissolving the bonds of matrimony now existing between your orator, Preston E. Tatum, and the defendant, Lillie Mae Byrd Tatum, and that orator be granted the right to marry again, and if your orator is mistaken in the relief herein prayed for, that in that event he prays for such other, further and different relief as he may in the premises be entitled to, and orator will ever pray."
Lillie Mae was served with the complaint on October 23. On November 22, she gave birth to Mary (Mary Elizabeth Tatum Kelley, the intervenor in the present case). The birth certificate designated Preston Tatum as the father. On November 28, affidavits of Gertie Lou Tatum, Gray Tatum, and Dan Tatum were filed in support of the divorce complaint. Each affidavit stated in substantially similar language that Lillie Mae had neither seen nor lived with Preston since the day after their marriage, that Lillie Mae had committed adulterous acts with "divers people," and that Lillie Mae was pregnant when the suit was filed. Gertie Tatum's affidavit also stated that Preston was not the father of Lillie Mae's unborn child. On November 29, Lillie Mae did not appear for trial, and the court issued apro confesso divorce decree, which states, in pertinent part:
 "It is therefore ordered, adjudged and decreed by the Court that the bonds of matrimony heretofore existing between the Complainant and Defendant be and the same are hereby dissolved, and that the said Preston E. Tatum is forever divorced from the said Lillie Mae Byrd Tatum for and on account of Voluntary Abandonment and Adultery.
 "It is further ordered, adjudged and decreed that neither party to this suit shall again marry except to each other until sixty days after the rendition of this decree, and that if appeal is taken within sixty days, neither party shall again marry except to each other during the pendency of said appeal.
 "It is further ordered that Preston E. Tatum and Lillie Mae Byrd Tatum both be, and they are hereby permitted to again contract marriage upon the payment of the cost of this suit.
 "It is further ordered that Preston E. Tatum, the complainant, pay the cost herein to be taxed, for which execution may issue.
 "Ordered, adjudged, and decreed, this 29th day of November, 1944.
 "/s/ Arthur Glover
"Judge Circuit Court, "in Equity."
On July 14, 1982, John Albert Tatum and Mary Ida Nichols filed a complaint in the Circuit Court of Autauga County, seeking an order for the sale of 358 acres of real property and a division of the proceeds among the joint owners. They also sought to quiet title in the land. Tatum and Nichols published a notice in the Prattville Progress to determine whether there were any unknown parties claiming an interest in the land.
On June 7, 1983, Mary Elizabeth Tatum Kelley filed an answer to the complaint. The answer stated that her father was Preston Tatum, that he had owned an interest in the property, and that because he had died intestate she was entitled to an interest in the land as his heir. On January 5, 1984, the trial court heard testimony regarding Mary's claim and, on that same day, denied her claim of a right to intervene as a party defendant. Stating that the 1944 divorce decree had determined that Preston was not her father, the court held that Mary was barred from intervening in the present action because of "res judicataor collateral estoppel."
Mary filed a motion to alter, amend, or vacate the judgment, giving the following reasons: (1) she was not bound by the divorce decree because she was not a party to the divorce proceeding and had not been represented by a guardian ad litem; (2) Preston's divorce petition did not request an adjudication or determination of paternity; (3) the divorce decree did not adjudicate or determine paternity; (4) the decree was secured by fraud and perjured testimony; (5) the denial of her intervention deprives *Page 1135 
her of intestate property interests without due process of law because she was not a party and was not represented in the divorce action; and (6) the evidence offered in the divorce proceeding was insufficient to overcome the presumption that Preston was her father. After hearing arguments, the trial court granted the motion to vacate its earlier order and stated in the subsequent order:
 "2. Mary Elizabeth Tatum Kelley is hereby permitted to intervene in this action as a party defendant.
 "3. Mary Elizabeth Tatum Kelley is a legitimate child and heir of Preston E. Tatum, deceased, and she is entitled to share in the distribution of the proceeds from the sale of the property described in the complaint."
The plaintiffs filed a motion for the court to vacate this later order, but the court denied the motion. The plaintiffs now appeal to this Court.
Appellants Tatum and Nichols contend that the 1944 divorce decree settled the issue of paternity. They argue that Preston raised the issue when he asserted in his complaint that he was not the father of the unborn child. Consequently, according to the appellants, the doctrine of res judicata now bars the present action. Alternatively, the appellants argue that even if the issue was not actually litigated, res judicata is still a bar because the issue could have been litigated, and the judgment was broad enough to encompass the issue. According to the appellants, a decree based on the wife's abandonment and adulterous behavior necessarily encompasses the issue of paternity of a child conceived during the marriage; they also state that the issue of paternity is central to the divorce decree. Finally, appellants offer a third res judicata argument, stating that Mary's intestate rights are in privity with Lillie Mae's and are, therefore, barred because Lillie Mae's rights were extinguished upon the divorce.
It is a well settled rule that a child born to a married woman is presumed to be the legitimate offspring of her husband. Leonard v. Leonard, 360 So.2d 710, 712 (Ala. 1978). This presumption may be rebutted only by clear and convincing evidence that it is naturally, physically, or scientifically impossible for the husband to be the father. Id.
The appellants concede they have not carried that burden and rely on the doctrine of res judicata. Under that doctrine, a prior judgment bars later actions on all questions falling within the scope of the original action, including those which could have been litigated by exercising due diligence. Sims v.City of Birmingham, 254 Ala. 598, 607, 49 So.2d 302, 310
(1950). Res judicata will apply to a later action only if the following elements are present: (1) the prior judgment was rendered by a court of competent jurisdiction; (2) the prior judgment was rendered on the merits; (3) the parties to both suits are substantially identical; and (4) the same cause of action is present in both suits. Wheeler v. First Alabama Bankof Birmingham, 364 So.2d 1190, 1199 (Ala. 1978).
It is clear from the record, including the divorce complaint, the affidavits, and the decree, that the issue of paternity was not actually litigated and was not adjudicated by the divorce decree. Preston may have raised the question by asserting that he was not the father of the then-unborn child, but he raised it in the context of Lillie Mae's allegedly adulterous behavior and did not request a declaration of nonpaternity. The issue of paternity was never actually litigated, and the divorce decree failed to mention the paternity of the then week-old child.
Although the paternity issue was not litigated, res judicata would still bar the later action if the issue could have been litigated and the four elements are present. In this case, however, at least one of the elements is missing: the parties to both actions were not substantially identical.
Because Mary was not a party to the divorce action and was not represented by a guardian ad litem, res judicata would apply only if Mary and Lillie Mae were in *Page 1136 
privity. For privity to exist between two people, there must be an identity of interests between them. Butler v. MichiganMutual Ins. Co., 402 So.2d 949, 953 (Ala. 1981). "Privity" has been defined as "a mutual or successive relationship to the same rights of property." Sims v. City of Birmingham, 254 Ala. 598,607, 49 So.2d 302, 310 (1950). In the present case, there is no mutual or successive relationship to the same rights of property between Lillie Mae and Mary Kelley. Lillie Mae's intestate rights were dependent on the continued existence of the marital relationship. Once that relationship was dissolved, those rights vanished. Drake v. Drake, 262 Ala. 609, 611-12,80 So.2d 268, 270 (1955); see code 1975, § 43-8-41. But the intestate rights of Mary arise from a different source — the alleged paternity of Preston — and do not depend on the continued existence of the marriage. See Code 1975, § 43-8-42. The intestate rights of Lillie Mae and Mary were very different, and thus, the two were not in privity in regard to these interests. Therefore, the doctrine of res judicata will not bar Mary Kelley's intervention in an action to exercise those rights.
This Court will not disturb an order denying or granting a motion to alter, amend, or vacate a judgment unless there has been a manifest abuse of discretion. Tolleson v. Tolleson,424 So.2d 1331 (Ala.Civ.App. 1983). The record must plainly and palbably show that the trial court erred. Coker v. FarmersMutual Exchange, 425 So.2d 489, 490 (Ala.Civ.App. 1983). There has been no such showing here. Exercising appropriate discretion, the trial court reconsidered its first order and vacated the judgment after hearing argument by counsel. The subsequent judgment is correct according to the law.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and ADAMS, JJ., concur.